# New Civil Liberties Alliance

June 17, 2020

Chairman Erik Brechnitz
50 Bald Eagle Drive
Marco Island, FL 34145
ebrechnitz@marcocitycouncil.com

Vice Chair Jared Grifoni
50 Bald Eagle Drive
Marco Island, FL 34145
jgrifoni@marcocitycouncil.com

Councilor Greg Folley
50 Bald Eagle Drive
Marco Island, FL 34145
gfolley@cityofmarcoisland.com

Councilor Larry Honig
50 Bald Eagle Drive
Marco Island, FL 34145
lhonig@marcocitycouncil.com

Councilor Howard Reed
50 Bald Eagle Drive
Marco Island, FL 34145
hreed@marcocitycouncil.com

Councilor Victor Rios
50 Bald Eagle Drive
Marco Island, FL 34145
vrios@marcocitycouncil.com

Councilor Charlette Roman
50 Bald Eagle Drive
Marco Island, FL 34145
croman@marcocitycouncil.com

Police Chief Tracy Frazzano
51 Bald Eagle Drive
Marco Island, FL 34145
tfrazzano@cityofmarcoisland.com

Alan L. Gabriel
City Attorney for Marco Island, FL
50 Bald Eagle Drive
Marco Island, FL 34145
agabriel@wsh-law.com

Re:   *City of Marco Island's Fixed ALPR System*

Dear Chairman Brechnitz, Councilors, Chief Frazzano, and Attorney Gabriel,

The New Civil Liberties Alliance (NCLA) submits the following letter urging the City of Marco Island to reconsider its plan to install three fixed Automated License Plate Reading Cameras (ALPRs) to monitor the comings and goings of every person who enters or exits the island. The City's proposed actions violate clear constitutional limits and are an affront to the privacy of innocent members of the community.

## I. STATEMENT OF INTEREST

NCLA is a nonpartisan, nonprofit civil-rights organization and public-interest law firm devoted to defending constitutional freedoms. The "civil liberties" of the organization's name include rights at least as old as the U.S. Constitution itself, such as jury trial, due process of law, the right to be tried in front of an impartial and independent judge, and the right to be free from unreasonable searches and seizures. Yet these selfsame rights are also very contemporary—and in dire need of renewed vindication—precisely because lawmakers, federal and state administrative agencies and executives, and sometimes even the courts have trampled them for so long.

NCLA views the administrative state as an especially serious threat to civil liberties. No other current aspect of American law denies more rights to more Americans. Although Americans still enjoy the shell of their Republic, there has developed within it a very different sort of government—a type, in fact, that the Constitution was designed to prevent.[1] This unconstitutional administrative state within the Constitution's United States is the focus of NCLA's attention. To this end, NCLA has filed lawsuits against governmental agencies and law enforcement entities that have promulgated policies in contravention of constitutional protections, most notably against the City of Coral Gables, Florida, for its unlawful use of ALPRs. *See Mas Canosa v. City of Coral Gables, Florida Department of Law Enforcement, and Florida Department of State*, Case No. 18-33927 CA-01 (11th Judicial Circuit).

Even where NCLA has not yet brought a suit to challenge the unconstitutional exercise of regulatory or executive power, it encourages government actors themselves to curb the unlawful exercise of such power by establishing meaningful limitations on their exercise of authority. NCLA believes that executive actors, such as city councils and other officials who oversee professional police departments, must ensure that they are not disregarding their constitutional obligations.

## II. BACKGROUND

During a workshop on June 8, 2020, the Marco Island City Council voted to support a budget proposal authorizing the purchase of three fixed ALPRs for the City. At the meeting, Marco Island Police Chief Tracy Frazzano indicated a desire to place two of the readers on the S.S. Jolley

---

[1] *See generally* Philip Hamburger, *Is Administrative Law Unlawful?* (2014).

Bridge, capturing both northbound and southbound traffic, and to place the third on the Goodland Bridge.[2] The estimated cost of this proposal is $59,250, in addition to $27,207 in projected maintenance costs over the next five years.[3]

The proposed ALPRs will record information by photographing the license plate of virtually every vehicle that enters or exits the island.[4] The readers record date, time, and location data for each photograph, which is subsequently entered into a database that can be accessed at any time to determine where a vehicle has been.[5] Additionally, police are able to load "hot lists" into the ALPR system so that a reader will immediately notify an on-duty police officer if a photographed vehicle has been registered as stolen or abandoned, or if the registered owner of the vehicle has a suspended driver's license.[6] The ALPRs even notify police if a vehicle is the subject of minor traffic infractions such as tag expiration.[7]

The City's current use of ALPRs is limited to a single mobile reader mounted on a squad car.[8] According to Chief Frazzano, the mobile ALPR alone made over 10,000 "hits" since it was introduced in 2015, most of which were the result of driver's license issues.[9] During the budget workshop, City Council Vice Chair Jared Grifoni stated that the previous Marco Island Police Chief informed him that the mobile ALPR captured over 168,000 vehicle photographs in 2017 alone.[10] By extrapolating this data, he estimated that almost 1,000,000 photographs were taken by the mobile reader since it was first deployed roughly five years ago, a figure which Chief Frazzano did not dispute.[11]

Chief Frazzano also acknowledged that the number of photographs taken by one mobile ALPR pales in comparison to the quantity that would be recorded by three new fixed ALPRs because the mobile reader only captures photographs when the squad car is deployed on public roads.[12] While the exact number of photographs that would be taken annually by three new fixed ALPRs is difficult to ascertain, the figure would likely reach millions. In documents recently disclosed to NCLA in discovery pursuant to a lawsuit, the City of Coral Gables revealed that a

---

[2] *Marco Island City Council Meeting: FY 2021 Capital Budget Workshop* (June 8, 2020).
[3] Marco Island FY 2021 Capital Budget Proposal, at 35.
[4] *Id.*
[5] *Id.*
[6] *Id.*
[7] *Marco Island City Council Meeting: FY 2021 Capital Budget Workshop* (June 8, 2020).
[8] *Id.*
[9] *Id.*
[10] *Id.*
[11] *Id.*
[12] *Id.*

NCLA
Page **4** of **8**

similar ALPR system had captured more than 101 million license plate images over the course of three years.

More alarming is how this enormous collection of data will be used. Chief Frazzano testified that police policy dictates that each data point is initially kept in the system for thirty days, but is then stored on a server for three years.[13] According to Chief Frazzano, the data is expunged after that period "unless it has an investigative purpose."[14] Not only is the data accessible by Marco Island Police on demand, but it is shared with over 50 other law enforcement agencies.[15]

Conspicuously absent from the meeting was any meaningful explanation of why this surveillance system would be necessary. Marco Island is ranked as one of the top three safest cities in the state of Florida out of the 129 cities reporting data.[16] The City experienced just six violent crimes in 2018 (a rate of 0.33 per 1000 people) and only 104 total crimes.[17] Alarms.org, a website that analyzes FBI Uniform Crime Statistics, describes Marco Island as a "tourist-frequented island communit[y] where crime is scarce."[18]

### III. FEDERAL AND STATE CONSTITUTIONAL CONCERNS

While the City's use of a single mobile ALPR may well be constitutional, particularly if it is not storing the images it captures, the proposed program of fixing ALPRs on virtually every point of entry to Marco Island is not. It violates both the Fourth Amendment of the United States Constitution and Article I, Section 23 of the Florida State Constitution to record motorists' every movement into and out of the City and to store that information for three years or more on a server accessible by over 50 law enforcement agencies without a warrant.

The Fourth Amendment to the United States Constitution affirms the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures," and provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

A vehicle is an "effect" within the language of the Fourth Amendment.[19] The Supreme

---

[13] *Id.*
[14] *Id.*
[15] Marco Island FY 2021 Capital Budget Proposal, at 35.
[16] *Safest Cities in Florida*, Alarms.org, January 19, 2020, *available at* https://www.alarms.org/safest-cities-in-florida/
[17] *Id.*
[18] *Id.*
[19] *United States v. Chadwick*, 433 U.S. 1, 12 (1977).

Court has recognized that the use of technology to monitor a vehicle's movements on public streets over time constitutes a search under the Fourth Amendment because it infringes upon an individual's "expectation of privacy."[20]

The Supreme Court has held that "society's expectation has been that law enforcement agents and others would not—and indeed, in the main, simply could not—secretly monitor and catalogue every single movement of an individual's car for a very long period."[21] Further, the Court has declared that "an individual maintains a legitimate expectation of privacy in the record of his physical movements as captured through" digital surveillance.[22] Thus, under the Fourth Amendment, "the Government must generally obtain a warrant supported by probable cause *before acquiring*" records of a person's movement over time.[23]

The fact that vehicles are within public view when photographed provides insufficient support for the proposition that such a comprehensive collection of location data does not constitute a search. Indeed, the Florida Supreme Court has recognized for years that a person has a reasonable expectation of privacy in "the location signals transmitted solely to enable the private and personal use of his cell phone, *even on public roads*," and that such location tracking could only be allowed with a warrant.[24] The question is thus not whether individuals reasonably expect that their vehicles will be viewed in public, but whether they reasonably expect that their *movements* will be recorded and aggregated in such a manner that the government is able to comprehensively ascertain all dates and times that they entered and exited Marco Island.[25]

While the Fourth Amendment to the United States Constitution outlines the bare minimum of privacy upon which law enforcement cannot encroach, state constitutions often afford further safeguards. Article I, Section 23 of the Florida State Constitution states, "Every natural person has the right to be let alone and free from governmental intrusion into his private life except as otherwise provided herein." Florida courts have recognized that this provision is "broader in scope than the protection provided in the United States Constitution," and that the drafters of the Florida amendment were particularly concerned with "the right to informational privacy."[26]

When a policy infringes upon an individual's privacy, the state bears the burden of

---

[20] *United States v. Jones*, 565 U.S. 400, 430 (2012) (Alito, J., concurring).
[21] *Id.* at 430.
[22] *Carpenter v. United States*, 138 S.Ct. 2206, 2217 (2018) (quoting *Jones*, 565 U.S. at 430 (Alito, J., concurring)).
[23] *Id.* at 2220-21.
[24] *Tracey v. State*, 152 So.3d 504, 525-26 (Fla. 2014) (emphasis added).
[25] *See Kyllo v. United States*, 533 U.S. 27, 35 (2001).
[26] *Thomas v. Smith*, 882 So.2d 1037, 1043 (Fla. 2nd Dist. Ct. App. 2004).

"demonstrating that the challenged regulation serves a compelling state interest and accomplishes its goal through the use of the least intrusive means."[27] In looking specifically at data collection by law enforcement, the Florida Supreme Court required a showing of "a clear connection between [] illegal activity and the person whose privacy would be invaded" to justify the surveillance.[28]

The City's proposed use of ALPRs violates these core limits. By fixing ALPR cameras at nearly every access point for the island, law enforcement will be able to create a comprehensive picture of everyone who is present on the island at any point in time. Of course, these cameras run 24 hours a day, and they are expected to store the information for at least three years. That means police will have a complete time-stamped list of *every person* who has been present on the island for a three-year period. This is an egregious, and unconstitutional, invasion of privacy. Moreover, Marco Island has no compelling need to institute such a comprehensive and invasive surveillance and data collection program. Marco Island's residents should not be subjected to such an invasive and unlawful surveillance program.

### IV. ADMINISTRATIVE LAW CONCERNS

Aside from violating basic constitutional rights, the City's proposed retention of ALPR data for three years compounds unlawful agency action that has improperly expanded government surveillance in the State of Florida. Chief Frazzano's description of the City's proposed three-year data retention policy for ALPR data and its proposed sharing with law enforcement no doubt relies upon agency action taken by the Florida Department of Law Enforcement (FDLE). However, FDLE's purported regulations governing ALPR data storage and access are unlawful agency actions that are the subject of ongoing litigation. Should the City insist on implementing FDLE's guidelines, it risks becoming embroiled in legal action concerning those guidelines too.

In 2014, the Florida State Legislature passed legislation pertaining to ALPRs and subsequent data retention and sharing.[29] The legislation tasked the Florida Department of State, "in consultation with" FDLE, to establish a retention schedule for data obtained through the use of ALPRs, and stipulated that the Department must establish a maximum period during which the data could be retained.[30]

FDLE did not undertake any formal rulemaking procedures, but instead the Criminal and

---

[27] *Rasmussen v. S. Fla. Blood Serv., Inc.*, 500 So.2d 533, 536 (Fla. 1987).
[28] *Shaktman v. State*, 553 So.2d 148, 152 (Fla. 1989).
[29] Fla. Stat. §§ 316.0777, 316.0778.
[30] Fla. Stat. § 316.0778(2).

Juvenile Justice Information Systems Council (CJJISC), a council located within FDLE, issued "Guidelines for the Use of Automated License Plate Readers."[31] While the CJJISC's Guidelines purport to set "uniform statewide guidelines" for the use of ALPRs, Florida statute gives no express rulemaking power to the CJJISC.[32] Worse, the CJJISC Guidelines did not follow required notice and comment procedures. Nevertheless, the Guidelines purport to allow cities like Marco Island to collect and store ALPR data for up to three years, aggregate it, and share it with law enforcement nationwide with no individualized suspicion of wrongdoing.[33]

As discussed, such uses of ALPR data are unconstitutional. But should the City look for cover from FDLE and its Guidelines, it should understand that the Guidelines themselves were unlawfully promulgated.

**V. PENDING LITIGATION**

The legal issues raised above are not hypothetical. NCLA currently represents Raul Mas Canosa in his lawsuit against the City of Coral Gables, as well as against the FDLE and Florida Department of State in a challenge to that municipality's use of ALPR cameras. *See Mas Canosa v. City of Coral Gables, Florida Department of Law Enforcement, and Florida Department of State*, Case No. 18-33927 CA-01 (11th Judicial Circuit). Mr. Mas Canosa raised federal Fourth Amendment claims, claims under Article I, Section 23 of the Florida Constitution, and administrative law claims. Following motions to dismiss filed by all defendants in that case, the Honorable Abby Cynamon allowed Mr. Mas Canosa's constitutional claims against the City and his administrative law claims against FDLE to proceed to discovery. These developments suggest that a lawsuit against the City of Marco Island would also be likely to withstand a motion to dismiss and reach the discovery stage.

**VI. CONCLUSION**

NCLA urges the Marco Island City Council to take immediate action and cease the City's unlawful implementation of its proposed fixed ALPR system. Because the City has not yet implemented the ALPR system nor has it spent the thousands of dollars an ALPR system will cost, it still has the opportunity to reconsider and demonstrate its commitment to respecting the

---

[31] Criminal and Juvenile Justice Information Systems Council, Guidelines for the Use of Automated License Plate Readers.
[32] *See* Fla. Stat. § 943.08.
[33] Criminal and Juvenile Justice Information Systems Council, Guidelines for the Use of Automated License Plate Readers.

fundamental rights of its citizens.

      If Marco Island does not reconsider, however, its conduct could well invite a meritorious lawsuit from a member of the community. While NCLA's attorneys are not members of the Florida Bar, they have appeared as counsel, *pro hac vice*, in lawsuits against other governmental entities in Florida, including in the lawsuit against Coral Gables over ALPRs. NCLA is always prepared to file appropriate legal action to protect the rights of Americans.

      Please respond to this letter no later than July 17, 2020.

Sincerely,

**Caleb Kruckenberg**
Litigation Counsel
caleb.kruckenberg@ncla.legal
**Andrew Klee**
Legal Intern
**Mark Chenoweth**
General Counsel
New Civil Liberties Alliance