IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

Case No. 2:22-cv-00079-JLB-MRM

SHANNON SCHEMEL,
STEPHEN OVERMAN,
and MICHAEL TSCHINDA,

      Plaintiffs,

v.

CITY OF MARCO ISLAND, FLORIDA,
and, TRACY FRAZZANO, in her Official
Capacity as Chief of Police for the City of
Marco Island,

      Defendants.
_____/

## DEFENDANTS' MOTION TO DISMISS COMPLAINT

Defendants, City of Marco Island, Florida ("City"), and Tracey Frazzano, in her Official Capacity as Chief of Police for the City ("Chief Frazzano") (collectively "Defendants"), pursuant to Federal Rule of Civil Procedure 12(b)(6), move to dismiss the Complaint,[1] filed by Plaintiffs, Shannon Schemel, Stephen Overman, and Michael Tschinda (collectively "Plaintiffs") [EFC No. 1], and state as follows:

## OVERVIEW

Plaintiffs purport to assert Fourth Amendment violations under the U.S. Constitution and various Florida constitutional claims stemming from the City's installation and use of an automated license plate recognition ("ALPR") system on

---

[1] The Complaint is cited herein as "Compl., ¶ __."

public thoroughfares in the City. Specifically, they take issue with the City's photographing publicly-visible license plates at specific, publicly visible locations around the City, and the statutorily-required retention of those images over time. These actions they claim somehow constitute an impermissible, warrantless search in violation of their Fourth Amendment rights and Florida's rights to privacy under Article I, Sections 12 and 23 of the Florida Constitution. Plaintiffs seek declaratory and injunctive relief, as a result.

In reality, Plaintiffs are asking this Court to rewrite and expansively redraw the bounds of federal and state constitutional law. Plaintiffs even acknowledge (as they must) that taking "isolated photographs of events occurring at a particular location" does not constitute a "'search' within the meaning of the U.S. and Florida Constitutions." Compl., ¶ 4. Nonetheless, and despite their expressed acknowledgement that no privacy right exists here, they attempt to manufacture an untenable claim that the collection and retention of the photographs of publically-visible license plates in a public location overtime, amounts to an unconstitutional, warrantless search. Plaintiffs' claims are unsupported (both procedurally and substantively) on the face of the Complaint and in well-settled constitutional law.[2] Accordingly, the Complaint should be dismissed for several reasons.

---

[2] Indeed, Plaintiffs' Counsel has already brought nearly identical claims in another forum—and not surprisingly lost. *See Raul Max Canosa v. City of Coral Gables, et al.,* No. 2018-033927-CA-01 (11th Cir. Ct. in and for Miami-Dade Cty., Fla., Oct. 4, 2021) (granting summary judgment for the City of Coral Gables and Florida Department of Law Enforcement because the collection and retention of ALPR data does not constitute a constitutional "search" under federal or Florida constitutional

At the outset, Plaintiffs claims against both the City and Chief Frazzano, in her official capacity, are redundant and the Chief should be dismissed with prejudice. In addition, Plaintiffs have filed a paradigm shotgun pleading, requiring dismissal of the entire Complaint on this basis alone. For example, Count III incorporates every paragraph of the Complaint (including the two preceding causes of action), resulting in what is essentially a "super-claim" containing the entirety of the pleading. Plaintiffs have also failed to cite any enabling legislation for their federal claim against the City.

On a substantive level—and in an effort to parse the shotgun pleading into separate causes of action in an abundance of caution —Plaintiffs' Complaint fails to state a claim, pursuant to Rule 12(b)(6), Fed. R. Civ. P. Indeed, Plaintiffs even <u>admit</u> as much in their own acquisition that the isolated photographs of their licenses plates are not a constitutional search. Compl., ¶ 4. Plaintiffs, therefore, cannot state a claim because they have not identified a legitimate expectation of privacy, nor does the ALPR system constitute a search. Further, to the extent Plaintiffs take issue with the three-year retention period of the ALPR's data, Plaintiffs also explicitly acknowledge the retention schedule is statutorily mandated under Chapters 316, Florida Statutes, and the corresponding retention guidelines promulgated by Florida's Criminal and Juvenile Justice Information System Council, and, thus, the City is merely complying

---

law, nor is the retention schedule unconstitutional). Plaintiffs' Counsel has since appealed the award of summary judgment in favor of the City of Coral Gables and the Florida Department of Law Enforcement to Florida's Third District Court of Appeals. Plaintiffs appear to be merely testing the waters in a different forum here.

with Florida law. Compl., ¶¶ 36, 37.  Accordingly, Defendants respectfully request the dismissal of Plaintiffs' Complaint.

## MEMORANDUM OF LAW

**I. CHIEF FRAZZANO SHOULD BE DISMISSED WITH PREJUDICE, AS THE COMPLAINT AGAINST HER IN HER OFFICIAL CAPACITY IS DUPLICATIVE OF THE CLAIMS AGAINST THE CITY.**

Plaintiffs have sued not only the City but also Chief Frazzano in her official capacity.  It is well settled under both Supreme Court and Eleventh Circuit precedent that a suit against a municipality and a municipal official in his or her official capacity is duplicative.  *Kentucky v. Graham*, 473 U.S. 159, 167 (1985) ("As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."); *Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991) ("Because suits against a municipal officer sued in his official capacity and direct suits against municipalities are functionally equivalent, there no longer exists a need to bring official-capacity actions against local government officials because local government units can be sued directly."); *Kubany v. School Board of Pinellas County*, 818 F. Supp. 1504 (M.D. Fla. 1993) (dismissing complaint against school board members sued in official capacities when suit also brought against the school board directly).  Accordingly, and notwithstanding the pleading deficiencies cited herein, Chief Frazzano respectfully requests dismissal with prejudice.

## II. THE COMPLAINT IS A SHOTGUN PLEADING, MERITING DISMISSAL ON THIS BASIS ALONE.

At the outset and separate and apart from the duplicative claims against Chief Frazzano, the Complaint should be dismissed as a clearly impermissible "shotgun pleading." Pursuant to Federal Rule of Civil Procedure 8, "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (providing general rule of pleading). Federal Rule of Civil Procedure 10(b) requires parties to plead claims and defenses clearly and to separate claims founded on separate transactions or occurrences. Fed. R. Civ. P. 10(b). Failure to comply with these pleading guidelines results in shotgun pleadings, which are "altogether unacceptable." *Cramer v. Florida*, 117 F.3d 1258, 1263 (11th Cir. 1997); *see also Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) (acknowledging that "a 'shotgun' approach to litigation . . . leav[es] the court with the cumbersome task of sifting through myriad claims, many of which [may be] foreclosed by [various] defenses").

Indeed, "[s]hotgun pleadings 'are flatly forbidden by the spirit, if not the letter, of these rules' because they are 'calculated to confuse the enemy, and the court, so that the theories for relief not provided by law and which can prejudice an opponent's case, especially before a jury, can be masked." *Barampov v. Amuial*, 986 F.3d 1321, 1324 (11th Cir. 2021) (quoting *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1321 (11th Cir. 2015)) (additional citations omitted). The Eleventh Circuit has "'little

5

tolerance' for them." *Id.* (quoting *Vibe Micro v. Shabanets*, 878 F.2d 1291, 1295 (11th Cir. 2018)).

A shotgun pleading may take a number of forms, but each generally falls into "four rough types or categories." *Weiland*, 792 F.3d at 1321. Of these four categories, only two are relevant here: (1) one that is "replete with conclusory, vague, material facts," none of which is "obviously connected to any particular cause of action[,]" *Id.* at 1322; and (2) the type of "complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint." *Barampov*, 986 F.3d at 1324. Here, Plaintiffs have filed an impermissible shotgun pleading as the Complaint is rife with "allegations" containing multiple sentences in each paragraph, replete with legal analysis, rendering an answer in response nearly impossible. *See, e.g.*, Compl., ¶¶ 38-51. Compounding matters, Plaintiff asserts counts that adopt the allegations of each preceding claim, causing each, successive count to carry all that came before and the last count to be a combination of the entire complaint. Compl. ¶¶ 52, 63, 68. For example, Count II, a Florida constitutional claim, adopts all of Count I, a federal claim. Compl., ¶ 63 (incorporating ¶¶ 1 through 62). Count III, in turn, adopts the entire pleading, including Counts I and II. Plaintiffs' pleading, therefore, commits the cardinal pleading sin of failing to comply with the clear standard required by the Federal Rules of Civil Procedure. *See Weiland*, 792 F.3d at 1323 n.13 (stating "failure to present each claim for relief in a separate

6

count, as required by Rule 10(b), constitutes a shotgun pleading"). Accordingly, the Complaint should be dismissed as an impermissible shotgun pleading.

## III. NOTWITHSTANDING THE AFOREMENTIONED PLEADING FAILURES, COUNTS I THROUGH III FAIL TO STATE A CAUSE OF ACTION ON THEIR FACE.

In abundance of caution, the City and Chief Frazzano address the merits of each claim (or lack thereof) to the extent feasible given the aforementioned pleading errors.

### a. *Plaintiffs Have Not Stated a Claim for a Fourth Amendment or an Article I, Section 12 Violation.*[3]

Counts I and II seek a declaration that the City violated Plaintiffs' Fourth Amendment rights under the U.S. Constitution and Article I, section 12 of the Florida Constitution, by the installation of the ALPR system and retention of the ALPR's collected data, as well as an injunction from further operation of the ALPR system. Compl., ¶¶ 52-67. Because Article I, Section 12 of the Florida Constitution states that

---

[3] Notably, Count I is ostensibly a claim raised pursuant to the Fourth Amendment. Compl., ¶¶ 52-62. In addition to the foregoing pleading failures, Count I fails to state a claim on its face because Plaintiffs wholly fail to invoke any enabling legislation. Indeed, while they purport to invoke this Court's federal question jurisdiction, pursuant to 28 U.S.C. § 1331, the Fourth Amendment—in and of itself—is not a private cause of action. Rather, Plaintiffs must cite some enabling legislation to state a cause of action of the alleged violation of federal constitutional rights by persons acting under color of state law. *See, e.g., Monell v. Dep't of Soc. Servs. Of New York*, 436 U.S. 658, 690-91 (1978) (recognizing that 42 U.S.C. § 1983 creates a private cause of action for alleged constitutional injuries caused by a government entity's official policy or custom). Plaintiffs fail to invoke any enabling legislations (such as Section 1983) that would create a private cause of action against the City as to Count I, meriting dismissal of this claim on this additional basis.

"[t]his right shall be construed in conformity with the 4th Amendment to the United States Constitution, as interpreted by the United States Supreme Court," Defendants explain the failure of both Counts I and II to state a claim under Rule 12(b)(6) together.

    1.    <u>Plaintiffs do not have a reasonable expectation of privacy in their license plate number.</u>

The protections of the Fourth Amendment can only be invoked when the claimant "has a reasonable expectation of privacy in the invaded place." *See State v. Markus*, 211 So. 3d 894, 902 (Fla. 2017) (citing *Minnesota v. Olson*, 110 S. Ct. 1684, 1687 (1990)). This expectation of privacy requires both a subjective expectation of privacy as well as an objectively reasonable expectation as determined by societal standards. *See State v. Young*, 974 So. 2d 601, 608 (Fla. 1st DCA 2008). However, no objectively reasonable expectation of privacy exists in ALPR data captured solely in plain sight of the public on public roadways.

In *United States v. Knotts*, the U.S. Supreme Court held as follows:

> <u>*A person travelling in an automobile on public thoroughfares has no reasonable expectation of privacy in his movements from one place to another.*</u> When [co- defendant] travelled over the public streets he voluntarily conveyed to anyone who wanted to look the fact that he was travelling over particular roads in a particular direction, the fact of whatever stops he made, and the fact of his final destination when he exited from public roads onto private property.

460 U.S. 276, 281-82 (1983) (emphasis added).

For this reason, federal courts have routinely and consistently held that one does not have a reasonable expectation of privacy in images of his or her plainly visible license plate. *See, e.g.*, *United States v. Wilcox*, 415 F. App'x 990, 992 (11th Cir. 2011)

(affirming ruling that criminal defendant "did not have a reasonable expectation of privacy in the plainly visible license plate" and that the use of a license plate "tag reader" did not violate the Fourth Amendment); *United States v. Miranda-Sotolongo*, 827 F.3d 663, 668 (7th Cir. 2016) (holding that police officer's use of a suspect's tag number to retrieve registration information in a law enforcement database was not a "search" because the suspect had no reasonable expectation of privacy since the database contained only non-private information); *United States v. Ellison*, 462 F.3d 557, 561-63 (6th Cir. 2006) (rejecting an argument that storing and retrieving a motorist's information using a license plate reader program amounted to an unlawful warrantless search and stating that "[e]very court that has addressed this issue has reached the same conclusion."); *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 529 (5th Cir. 1999) (rejecting argument that computer check of license plate required a warrant because "[a] motorist has no privacy interest in her license plate number," which "is constantly open to the plain view of passersby"). Plaintiffs' challenge to the ALPR system here is no different for purposes of the Fourth Amendment.

Further, this principle has also been recognized by courts that have upheld the use of ALPR systems - like the one at issue in this case - against constitutional challenges. *See United States v. Yang,* 958 F.3d 851 (9th Cir. 2020) (affirming denial of motion to suppress because the use of an ALPR database was not a Fourth Amendment search as it did not reveal "the whole of [the defendant's] physical movements"); *United States v. Walraven*, 892 F.2d 972, 974 (10th Cir. 1989) (holding that running defendant's license plate through computer database did not implicate

9

privacy interests); *USA v. Rubin*, No. 18-cr-00568-CRB-1, -- F. Supp. 3d --, 2021 WL 3773609 (N.D. Fla. Aug. 25, 2021) (declining to suppress evidence "[b]ecause accessing the ALPR database was not a Fourth Amendment search"); *Chaney v. City of Albany*, No. 6:16-CV-1185, 2019 WL 3857995, at *8–9 (N.D.N.Y. Aug. 16, 2019) (holding that "use of the LPR technology did not violate Plaintiff's Fourth Amendment rights because he had no reasonable expectation of privacy in his license plate information while traveling on public roads," and observing that the ALPR system recorded "without any particular focus on specific individuals" and only recorded "the occasions when [a vehicle] passed a camera"); *Uhunmwangho v. State*, No. 09-19-00119-CR, 2020 WL 1442640 (Tex. App. Mar. 25, 2020), at *1, 6-9 (rejecting a Fourth Amendment challenge to the use of an ALPR system). Indeed, Plaintiffs cannot point to <u>any</u> on-point precedent demonstrating that they have an objective (let alone subjective) interest in their license plate number or their readily observable movements on public roadways.

Here, Plaintiffs have only alleged that the City recorded information (specifically, their license plate number, of which there is no privacy interest in the first place) while they were on public roadways. To wit, Florida law <u>requires</u> all vehicles to display a "plainly visible and legible" license plate "<u>at all times while driven, stopped or parked upon any highways, roads or streets of this state.</u>" § 316.605, Fla. Stat. (emphasis added). Plaintiffs also have not alleged (and cannot possibly allege) that they had a reasonable expectation of privacy in their movements on the City's openly public roadways, however conclusory they wish to make these allegations.

10

Compl. ¶¶ 53, 59, 65.  Therefore, Plaintiffs have not alleged facts sufficient to show that the City plausibly violated their Fourth Amendment and Article I, section 12 rights (and cannot) because they have not identified (and cannot identify) an underlying expectation of privacy.

> 2. <u>The City's aggregation of ALPR data does not constitute a search under federal or Florida law.</u>

Plaintiffs also assert that the City's aggregation of individual images of license plate scans over a three year data retention period somehow constitutes a "search" within the meaning of the Fourth Amendment and Florida's Art. I, Section 12. Compl., ¶¶ 57, 66.  Plaintiffs are impermissibly asking this Court to expand and revise the definition of a "search" under federal and Florida law.  Indeed, there is no authority supporting the proposition that the aggregation of ALPR data captured in <u>public view</u>, subject to statutory retention periods, amounts to a warrantless search. In fact, numerous federal courts have rejected this theory, including specifically in the context of camera images gathered from public view.  *See, e.g.*, *United States v. Houston*, 813 F.3d 282, 287-89 (6th Cir. 2016) (finding no reasonable expectation of privacy surrounding the warrantless use of video cameras that were directed, full time, at an individual's property, because it captured the same views enjoyed by passersby on public roads; and finding that the length of time of that surveillance was not relevant); *United States v. Bucci*, 582 F.3d 108, 116-17 (1st Cir. 2009) (holding that eight month-long video surveillance of defendant's driveway and garage door did not violate his Fourth Amendment rights because those activities were conducted in public, and

noting that the defendant's "lack of a reasonable objective expectation of privacy" was "clear"); *United States v. Mazzara*, 2017 WL 4862793 at *11-12 (S.D.N.Y. Oct. 27, 2017) (holding that 21 months of warrantless video camera surveillance of a residence from across the street did not violate Fourth Amendment); *United States v. Moore*, 2014 WL 4639419, at *3-4 (S.D. Fla. Sept. 16, 2014) (upholding warrantless police video surveillance of an individual over eight months using six video cameras, and rejecting argument that the length of the surveillance changed the Fourth Amendment analysis); *United States v. Aguilera*, 2008 WL 375210 at *2 (E.D. Wis. Feb. 11, 2008) (denying motion to suppress evidence from warrantless video surveillance because "[t]he police could have stood on the street outside defendant's house and observed the comings and goings from his driveway; substitution of a camera for in-person surveillance does not offend the Fourth Amendment; and the camera did not record activities within defendant's home or its curtilage obscured from public view"); *Raul Max Canosa v. City of Coral Gables, et al.,* No. 2018-033927-CA-01 (11th Cir. Ct. in and for Miami-Dade Cty., Fla., Oct. 4, 2021) (granting summary judgment for the City of Coral Gables because the collection of ALPR data does not constitute a constitutional "search"). Oddly, Plaintiffs even admit, "When the government takes isolated photographs of events occurring at a particular location, it does not engage in a "search" within the meaning of the U.S. and Florida Constitutions." Compl., ¶ 4.

Plaintiffs cite several cases within their Complaint, seemingly in an effort to manufacture their alleged constitutional claims. *See* Compl., ¶ 41 (Citing *Carpenter v. United States*, 138 S. Ct. 2206 (2018) and *United States v. Jones*, 565 U.S. 400 (2012)), ¶

12

47 (citing *Tracey v. State*, 152 So.3d 504, 525 (Fla. 2014)).  None of these cases, however, are persuasive here.

Specifically, *Carpenter* addressed the government's warrantless acquisition of the defendant's <u>cell phone location</u>, which catalogued the defendant's movements in both public and <u>private</u> spaces for several months.  138 S. Ct. at 2209.  The Supreme Court found that particular collection of data was a Fourth Amendment violation because it gave the government "near perfect surveillance" of the defendants' comings and goings <u>everywhere</u>, not just in public (unlike here).  *Id.* at 2209-10.  Indeed the Court explicitly distinguished surveillance of a vehicle's location because "[w]hile individuals regularly leave their vehicles, they compulsively carry cell phones with them all the time," and "[a] cell phone faithfully follows its owner <u>beyond public thoroughfares</u>."  *Id.* at 2218 (emphasis added).  Moreover, the *Carpenter* Court expressly stated that its opinion "do[es] not … call into question conventional surveillance techniques and tools, such as security cameras."  *Id.* at 2220.

Similarly, Plaintiffs' reliance on *United States v. Jones* fails to demonstrate any state or federal constitutional violations have occurred through the use of the City's ALPR system.  565 U.S. 400 (2012).  *Jones* involved the use of GPS-tracking device physically attached the defendant's vehicle without a warrant.  *Id* at 402-03.  The Supreme Court found that the physical attachment of the GPS device to the vehicle amount to common law trespass of the defendant's property.  In so holding, the *Jones* Court state that "[i]t is important to be clear about what occurred in this case: The Government physically occupied private property for the purpose of obtaining

13

information." *Id*. Here, on the other hand, there is <u>no</u> physical occupation of any aspect of Plaintiffs' vehicles (nor do Plaintiffs allege as such). The City merely captures a publicly-displayed license plates (which Florida law requires to be shown, pursuant to § 316.605, Fla. Stat.) at individual points on certain <u>public</u> thoroughfares. Accordingly, *Jones* is simply not applicable here.

Finally, Plaintiffs cite to *Tracey v. State*, 152 So.3d 504, 525 (Fla. 2014), in support of their Florida constitutional claims. Once again, *Tracey* fails to move the ball towards a prima facie case under Rule 12(b)(6). Like in *Carpernter*, *Tracey* addressed government surveillance of the defendant's cell phone data through cell site location information. *Id.* Unlike here, the government's cell site surveillance provided information of the defendant's <u>private</u> location, specifically, his residence and thus invaded his subjective expectation of privacy. *Id.* Plaintiffs do not (and cannot possibly) allege that the City has conducted any surveillance of their <u>private</u> whereabouts in this case. *See generally*, Compl. They also do not allege (nor can they) that the retention of this data for the statutorily regulated, three-year period provides any information about their <u>private</u> whereabouts. *Id.* Indeed, on the face of the Complaint, the affirmative allegations are that the City has license plate readers set up in discrete, public locations to capture an image of a license plate as a vehicle passes by the camera. Compl., ¶¶ 2, 18, 30.

Plaintiffs' own recognition that isolated photographs of events in public do not amount to a constitutional search should be fatal to their claims here. Not only do they recognize that there is no privacy interest in their plainly-visible license plates or

14

their public coming-and-goings, they affirmatively acknowledge that the retention period is <u>statutory</u>. Compl, ¶¶ 36-37 (citing § 316.0778(2), Fla. Stat. (requiring state law officials to establish a retention schedule for ALPR systems) and the corresponding CJJIS Guidelines (establishing the ALPR retention schedule)).[4] Accordingly, Counts I and II fail to state a claim because there is no underlying privacy interest at stake nor has the City engaged in a "search" within the meaning of federal or Florida constitutional law.

> b. *Plaintiffs Have Not Stated a Claim for an Article I, Section 23 Violation of the Florida Constitution in Count III.*

Despite the fact that Plaintiffs assert the causes of action in one by incorporating all preceding paragraphs into Count III, even assuming, *arguendo*, Plaintiffs had properly asserted a standalone cause of action in Count III (which they have not), they have failed to state a claim for a violation of Article I, Section 23 of the Florida Constitution.

Specifically, Article I, Section 23 provides a right of privacy under the Florida Constitution which, in the context of an alleged search or seizure, is coterminous with the interpretation and application of the Fourth Amendment (and with the parallel provision in Article 1, section 12 of the Florida Constitution. *See e.g., State v. Geiss*, 70 So. 3d 642, 645-46 (Fla. 5th DCA 2011) ("[T]he 'except as otherwise provided herein' language of article 1, section 23 must be read as authorizing governmental intrusion

---

[4] As stated in the Complaint, the CJJIS "Guidelines for the Use of Automated License Plate Readers" provide that ALPR data "gathered without specific suspicion may be retained for no longer than 3 anniversary years." Guidelines, §6(e); Compl., ¶ 37; *see also* Fla. Admin Code3 1B-24.003(1)(b) (setting forth Florida's records retention schedule for various records).

into one's personal life to the same measure [as allowed under the Fourth Amendment by the U.S. Supreme Court.]). Notably,

> The Florida Supreme Court has adopted a test to assess the claim of an article I, section 23 privacy violation: First, courts must determine whether the individual possesses a legitimate expectation of privacy in the information or subject at issue. If so, the burden shifts to the State to show (a) that there is a compelling state interest warranting the intrusion into the individual's privacy and (b) that the intrusion is accomplished by the least intrusive means.

*Joseph v. Sec'y, Dep't of Corr.*, No. 8:16-CV-3415-T-33SPF, 2018 WL 4301554, at *7–8 (M.D. Fla. Sept. 10, 2018) (quoting *State v. Tamulonis*, 39 So.3d 524, 528 (Fla. 2d DCA 2010)) (additional internal quotations omitted); *see also Bd. of Cty. Comm'rs of Palm Beach Cty. v. D.B.*, 784 So. 2d 585, 588, 590 (Fla. 4th DCA 2001) (explaining that, under Art. I, § 23, "before the right to privacy attaches and the standard is applied, a reasonable expectation of privacy must exist."); *City of N. Miami v. Kurtz*, 653 So. 2d 1025, 1028 (Fla. 1995) ("[T]o determine whether Kurtz … is entitled to protection under [A]rticle I, section 23, we must first determine whether a governmental entity is intruding into an aspect of Kurtz's life in which she has a 'legitimate expectation of privacy.'").

Count III must be dismissed for the same reasons as Counts I and II because, as set forth, *supra*, Plaintiffs lack a legitimate expectation of privacy here. Indeed, all three claims rely on the same allegations of harm, i.e., the recording and retention of ALPR data from plainly visible license plates of vehicles on public thoroughfares. As with Counts I and II, Plaintiffs are improperly asking this Court to create a right of privacy where none exists.

Count III, moreover, appears to take greater issue with the <u>retention</u> of ALPR data than the prior counts.  Specifically, Plaintiffs allege that the City does not have a compelling interest in "retaining for three or more years its records of Plaintiffs' movements[.]"  Compl., ¶ 75.  However, this claim is flawed for another reason: Plaintiffs affirmatively allege that the retention schedule for ALPR data is set by Florida statute.  *See* Compl., ¶ 36 (citing § 316.0778(2), Fla. Stat.).  Indeed, Florida law requires the Department of State, in consultation with the Florida Department of Law Enforcement ("FDLE") to "establish a retention schedule for records containing images and data generated through of an [ALPR] system.  The retention schedule must establish a maximum period that the records may be retained."  § 316.0778(2), Fla. Stat.  Further—and as affirmatively alleged in Plaintiffs' Complaint—the FDLE has issued said retention schedule, setting forth <u>a three-year maximum retention period for ALPR records, unless "specific suspicion" exists</u>.  Compl., ¶ 37 (citing the FDLE's Guidelines, § 6(e)).  And as Plaintiffs allege, the City has stated it will maintain ALPR records for a three year maximum, absent specific suspicion.  Compl., ¶¶ 25, 35.  In other words, Plaintiffs *affirmatively allege* that the City is compliant with Florida law.

In reality, Plaintiffs appear to be challenging the data retention schedule set forth by the FDLE—a claim which they have already litigated and lost.  *See Raul Max Canosa v. City of Coral Gables, et al.,* No. 2018-033927-CA (granting summary judgment in favor of the FDLE because it did not violate the plaintiff's rights by issuing and setting the ALPR retention schedule).  Because Plaintiffs have not identified any legitimate privacy interest nor any facts showing how the City is violating such

17

interest—indeed, they allege the opposite, that the City is complaint with Florida law— Count III must also be dismissed for failure to state a claim.

## CONCLUSION

Plaintiffs' Complaint should be dismissed both procedural and substantive grounds. Any claim against Chief Frazzano in her official capacity is duplicative of that against the City, meriting her dismissal <u>with prejudice</u>. A plain reading of the Complaint, moreover, reflects that is a paradigm shotgun pleading, and attempting an answer in response would amount to a herculean task. Notwithstanding—and in an effort to parse out Plaintiffs' individual causes of action—it is clear that Plaintiffs have not and cannot state a substantive cause of action under the Fourth Amendment or its Florida counterparts. Accordingly, Defendants respectfully request the dismissal of the Complaint <u>with prejudice</u>.

## LOCAL RULE 3.01(g) CERTIFICATION

Defendants' Counsel certifies that she corresponded with Counsel for Plaintiffs on March 16, 2022, in an effort to meet and confer regarding Plaintiffs' position on this Motion. Plaintiffs oppose this Motion.

WHEREFORE, Defendants, City of Marco Island and Chief of Police Tracy Frazzano respectfully request an order granting the Motion to Dismiss, dismissing Plaintiffs' Complaint [ECF No. 1] in its entirety with prejudice, and granting any further relief that the Court deems appropriate.

Dated: March 21, 2022    Respectfully submitted,

        WEISS SEROTA HELFMAN
        COLE & BIERMAN, P.L.
        *Counsel for Defendants*
        200 East Broward Boulevard, Suite 1900
        Fort Lauderdale, FL  33301
        (954) 763-4242

        By: */s/ Anne R. Flanigan*
            ANNE REILLY FLANIGAN
            Florida Bar No.: 113889
            Primary email: aflanigan@wsh-law.com
            Secondary email: tjackson@wsh-law.com
            KAITLYN N. KELLEY
            Florida Bar No. 1028353
            Primary email: kkelley@wsh-law.com
            Secondary email: mboschini@wsh-law.com

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served by electronic filing on March 21, 2022, on all counsel or parties of record on the Service List below.

## SERVICE LIST

SHANNON SCHEMEL, STEPHEN OVERMAN and MICHAEL TSCHIDA
v.
CITY OF MARCO ISLAND FLORIDA and TRACY FRAZZANO
Case No. 2:22-cv-00079-JLB-MRM
United States District Court
Middle District of Florida (Ft. Myers)

**Richard A. Samp**
Email: rich.samp@ncla.legal
Telephone: 703-525-9357
**Sheng Tao Li**
Email: sheng.li@ncla.legal
Telephone: 202-918-6904
New Civil Liberties Alliance
1225 19th Street NW, Suite 450
Washington, DC 22207
*Counsel for Plaintiffs*