## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA

| | | |
|---|---|---|
| **SHANNON SCHEMEL,** | ) | |
| **STEPHEN OVERMAN,** | ) | |
| and **MICHAEL TSCHIDA,** | ) | |
| Plaintiffs, | ) | **Case No. 2:22-cv-** |
| v. | ) | **00079-JLB-MRM** |
| | ) | |
| **CITY OF MARCO ISLAND, FLORIDA,** and | ) | |
| **TRACY FRAZZANO,** in her official capacity | ) | |
| as Chief of Police for the City of Marco Island, | ) | |
| Defendants. | ) | |
| | ) | |

## PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS

### INTRODUCTION

Plaintiffs, three law-abiding citizens of the City of Marco Island, are challenging the City's decision to install Automatic License Plate Recognition systems (APLRs) at strategic locations throughout the Island and to maintain the information collected by the APLRs for at least three years. They assert that the City's actions violate their legitimate expectations of privacy, in violation of the U.S. and Florida Constitutions.

Defendants have moved to dismiss the Complaint, alleging that it fails to state a claim upon which relief can be granted. Defendants argue that Plaintiffs have not stated a constitutional violation because they lack "a reasonable expectation of privacy in their license plate number[s]." Defendants are mischaracterizing the privacy interest Plaintiffs assert. They assert a legitimate expectation of privacy in the record of their physical movements over an extended period of time. Complaint ¶¶ 40-42. The Supreme Court explicitly held in *Carpenter v. United States*, 138 S. Ct. 2206 (2018), that such expectations

are entitled to protection under the Fourth Amendment. The Complaint includes numerous factual allegations to support Plaintiffs' claim that Defendants—by recording their locations on multiple occasions daily and retaining that information for at least three years—are creating a detailed record of their physical movements that impinges on their privacy rights. *See, e.g.*, Complaint ¶¶ 17-36.

In their motion to dismiss, Defendants contest the allegation that their APLRs compile such a record. *See, e.g.*, Motion 14. Defendants will have an opportunity to raise that defense at trial. But for purposes of this motion, Plaintiffs' factual allegations must be accepted as true, and they suffice to state a claim for relief under *Carpenter*. Courts have consistently held that "[t]he existence of a legitimate expectation of privacy must be determined after examining all the facts and circumstances in a particular case." *People v. Tafoya*, 494 P.3d 613, 618 (Colo. 2021).

Defendants also argue that Plaintiffs can have no reasonable expectation of privacy under the facts of this case because all of the surveillance occurs while they are driving on public roads. The Supreme Court has explicitly rejected that argument. *Carpenter*, 138 S. Ct. at 2217; *Katz v. United States*, 389 U.S. 347, 351-52 (1967) (explaining that "what [one] seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected").[1]

---

[1] Defendants raise several other arguments in support of their motion, each of which is insubstantial. In particular, Defendants assertion that the complaint should be dismissed as an improper "shotgun pleading" is based on a fundamental misunderstanding of that term. The three closely related privacy claims asserted by the Complaint all arise from a single event: Defendants' decision to install ALPRs throughout Marco Island and to retain data collected by the ALPRs for three years.

## STATEMENT OF THE CASE

The factual allegations underlying Plaintiffs' claims—which must be accepted as true for purposes of this motion to dismiss, *McGroarty v. Swearingen*, 977 F.3d 1302, 1306 (11th Cir. 2020)—are succinctly set out in ¶¶ 17-37 of the Complaint.

ALPRs are high-speed cameras capable of recording images of the license plates of all motor vehicles that come within their field of vision. They can be operated while mobile (*e.g.*, placed in a moving police car) or at a fixed location. One ALPR can record thousands of license plate images per minute. Complaint ¶ 17. Marco Island began using its first ALPR in 2015—a mobile unit mounted on a squad car. Over the past seven years, this single unit has captured images of more than 1,000,000 license plates. *Id.* ¶ 22.

In April 2021, Defendants installed at least three new ALPRs at fixed locations. They installed ALPRs on each of the two spans of the Jolley Bridge and a third ALPR on San Marco Road (at its intersection with Stevens Landing Drive) on the approach to the Gober Bridge. By installing ALPRs on or near the three bridges, Defendants ensure that *every* vehicle entering and exiting the Island is being photographed, 24 hours a day, seven days a week. *Id.* ¶ 30. Indeed, Defendants stated explicitly that they chose the bridge locations to ensure 100% coverage of Island traffic. *Id.* ¶ 31.

ALPRs are connected to systems that convert the images of license plates into computer-readable data; the systems record license-plate number as well as the date, time, and location of the observation. *Id.* ¶ 18. The real threat to personal privacy arises not from isolated capture of license plates but from the recording and aggregation of that

3

data for extended periods of time. *Id.* ¶ 20. By retaining the data for three years (as Defendants are doing), law-enforcement personnel compile detailed information about the daily lives of individuals who are photographed regularly. *Id.* ¶¶ 20, 57. The privacy concerns are compounded when, as here, police departments share all their information about innocent motorists with other law-enforcement agencies. *Id.* ¶¶ 21, 54.

The principal means of transportation for Plaintiffs are their cars. They regularly drive their cars in connection with their everyday activities; *e.g.*, commuting to work, shopping, visiting friends, and attending meetings. They enter and exit Marco Island virtually every day during those car trips. *Id.* ¶ 11. Indeed, the absence of alternative methods of transportation on the Island means that they could not complete their daily responsibilities without using their respective cars. *Id.* ¶ 12. In the months since Defendants began operating the three stationary ALPRs, Plaintiffs have each driven across the Island's three bridges on hundreds of occasions—meaning that they have already been photographed on hundreds of occasions. The City will have thousands of photographs of each Plaintiff if it is allowed to retain ALPR records for three years. Such photographs are in addition to the many occasions they likely have been photographed by the City's mobile ALPR. *Id.* ¶¶ 33-34.

Defendants are rapidly accumulating a large database that provides a detailed picture of Plaintiffs' movements. Based on the frequency and times of day of Plaintiffs' bridge crossings, Defendants can easily compile a comprehensive profile of their day-to-

4

day lives. Yet Defendants have no plans to expunge any of that data regarding innocent and lawful conduct in the foreseeable future. *Id.* ¶ 35.

Plaintiffs contend that Defendants' accumulation of data regarding their movements on a daily basis violates their reasonable expectations of privacy. The Complaint asserts that this invasion of their privacy violates: the Fourth Amendment to the U.S. Constitution (Count I); Article I, Section 12 of the Florida Constitution (Count II); and Article I, Section 23 of the Florida Constitution (Count III).

## ARGUMENT

### I.   PLAINTIFFS HAVE STATED A CLAIM FOR VIOLATION OF THEIR RIGHTS UNDER THE FOURTH AMENDMENT

The Fourth Amendment to the Constitution protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." The "basic purpose" of the Fourth Amendment "is to safeguard the privacy and security of individuals against arbitrary invasions by governmental officials." *Camara v. Municipal Court of City and County of San Francisco*, 387 U.S. 523, 528 (1967).

The government engages in a "search" subject to Fourth Amendment controls whenever it intrudes upon something an individual seeks to preserve as private, so long as society is prepared to recognize the privacy interest as reasonable. *Kyllo v. United States,* 533 U.S. 27, 33 (2001). The Fourth Amendment generally requires police to obtain a warrant before engaging in a "search," and warrantless searches are presumptively unreasonable. *United States v. Karo*, 468 U.S. 705, 714-15 (1984). Because

Defendants have neither sought nor obtained warrants for their extensive surveillance of Plaintiffs, their conduct violates the Fourth Amendment if this Court determines that capture and retention of ALPR records constitutes a "search."

The Supreme Court held in *Carpenter* that "individuals have a reasonable expectation of privacy in the whole of their physical movements" and thus the government engages in a Fourth Amendment "search" when it uses electronic means to gather that information. 138 S. Ct. at 2217. The Complaint alleges that Defendants' aggregation of data derived from the hundreds of surveillance photographs taken of each Plaintiff permits them to track the whole of Plaintiffs' physical movements. Accordingly, the Complaint adequately alleges a Fourth Amendment violation.

    **A.**    ***Carpenter* Is Indistinguishable; It Focuses on Whether Government Is Gathering Data on the Whole of an Individual's Physical Movements, Not on the Means Used to Gather Data**

Defendants seek to distinguish *Carpenter* by noting that it involved cell-site records, not use of ALPRs. Def. Mot. 13. But Defendants' focus on the means by which the government gathers its data misses the mark; *Carpenter* focused instead on defining the contours of individuals' Fourth Amendment privacy rights. *Carpenter* noted that "[a] majority of this Court has already recognized that individuals have a reasonable expectation of privacy in the whole of their physical movements." 138 S. Ct. 2217 (citing *United States v. Jones*, 565 U.S. 400, 430 (2012) (Alito, J., concurring in judgment); *id*. at 415 (Sotomayor, J., concurring)). While Justices Alito's and Sotomayor's concurrences in *Jones* were directed towards GPS devices, *Carpenter* extended their reasoning to cell-

6

site records. The Court expressed concern over the emergence of a wide variety of "remarkably easy, cheap, and efficient" tracking technology, *id.* at 2019, and did not suggest that tracking cell-site records raised greater constitutional concerns than alternative tracking technology. To the contrary, it reaffirmed that Fourth Amendment analysis "must take account of more sophisticated systems that are already in use or in development," *id.* at 2018 (quoting *Kyllo*, 533 U.S. at 36).

*Carpenter* thus did not create a specific rule against government access to cell-site records without a warrant. Rather, it held that law-enforcement personnel violated Carpenter's Fourth Amendment rights because the cell-site records it obtained "provide[d] an intimate window into a person's life, revealing not only his particular movements, but through them his 'familial, political, professional, religious, and sexual associations.'" *Ibid.* (quoting *Jones*, 565 U.S. at 415 (Sotomayor, J., concurring)).

Plaintiffs have stated a claim upon which relief can be granted by alleging that Defendants' long-term aggregation of ALPR data violates their privacy in their physical movements. They have included many factual allegations in support of that claim, including: (1) Defendants operate at least three stationary APLRs and one mobile ALPR, strategically located to ensure 100% coverage of Island vehicular traffic; (2) the ALPRs capture *millions* of images annually; (2) Defendants have been photographing and recording each Plaintiff's precise location multiple times every day, beginning in April 2021; (3) Defendants will retain that information in easily retrievable form for at least three years from the date of recording; (4) Defendants share that information with

7

other law enforcement agencies; (5) refraining from driving on the City's streets is not an option for Plaintiffs; daily travel in their cars is the only means by which Plaintiffs can commute to their places of employment and complete the other activities essential to their day-to-day existence; and (6) because of the nature of Plaintiffs' travels, Defendants can glean from their massive data collection detailed information about where and when Plaintiffs work, whether they are in town or away on vacation, and with whom they associate. Complaint ¶¶ 18, 21, 23, 30, 31, 33, 34, 35, 54, 56, 59.

*Carpenter* makes clear that whether any particular government surveillance program constitutes a "search" within the meaning of the Fourth Amendment requires a fact-intensive examination of the extent to which the program gathers information about the complaining individuals' lives. 138 S. Ct. at 2217-19. Post-*Carpenter* decisions from the lower courts agree. *Leaders of a Beautiful Struggle v. Baltimore Police Dep't*, 2 F.4th 330, 333 (4th Cir. 2021) (*en banc*); *Commonwealth v. McCarthy*, 484 Mass. 493, 494 (2020); *Tafoya*, 494 P.2d at 618 ("The existence of a legitimate expectation of privacy must be determined after examining all the facts and circumstances in a particular case."). Whether, as alleged in the Complaint, Defendants' surveillance program provides them with data sufficient to discern Plaintiffs' historical movements is a fact-specific issue not appropriately decided in connection with a motion to dismiss.

At the pleadings stage, a court accepts "the allegations of the complaint as true and construe[s] them in the light most favorable to the plaintiffs." *Ray v. Spirit Airlines*, 836 F.3d 340, 1347 (11th Cir. 2016). To survive a Rule 12(b)(6) motion to dismiss, a

complaint need only "plead 'enough facts to state a claim that is plausible on its face.'" *Id.* at 1247-48 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plaintiffs' detailed factual allegations easily meet that unexacting plausibility standard.

The facts underlying the Fourth Amendment claim in *Carpenter*—police obtained a suspect's cell-site records for a *seven-day* period—differ from those at issue here. But many of those differences suggest that it is Defendants' surveillance of Plaintiffs that intrudes more severely on privacy rights. Plaintiffs have been the targets of daily surveillance for a far longer period—it began in April 2021, and Defendants will retain all their ALPR data for at least three years. The *Carpenter* cell-site records provided more frequent location information on any single day than do Defendants' ALPR data, but the latter's location information is far more accurate. The *Carpenter* cell-site records could provide only an approximation of the target's location. That is, it could only place the target within a "wedge-shaped sector ranging from one-eighth to four square miles." *Carpenter*, 138 S. Ct. at 2218. In contrast, Defendants' ALPR information discloses Plaintiffs' *precise* locations—not a mere approximation. Complaint ¶¶ 18, 58. Most importantly, *Carpenter* involved a targeted investigation of a single suspected criminal and sought records covering only one week. Defendants' surveillance program is vastly larger in scope and duration and entails long-term maintenance of personal information regarding *every resident* of Marco Island, including law-abiding citizens like Plaintiffs.[2]

---

[2] Moreover, the cell-site records at issue in *Carpenter* implicated the "third-party doctrine," under which the government is generally held *not* to have engaged in a search if it obtains information about the subject of its investigation from a third party. *See United States v. Miller*, 425 U.S. 435 (1976). Police

**B.     Plaintiffs Do Not Surrender All Fourth Amendment Privacy Rights When They Travel on Public Roads**

In seeking dismissal of the Fourth Amendment claim, Defendants' principal argument is that "no objectively reasonable expectation of privacy exists in ALPR data captured solely in plain sight on public roadways." Def. Mot. 8. But the only case cited by Defendants for that proposition, *United States v. Knotts*, 460 U.S. 276 (1983), is a 40-year-old Supreme Court decision that, *Carpenter* explained, has little relevance to cases involving modern electronic monitoring devices that did not exist in the 1980s.

*Knotts* involved the government's use of a "beeper" to aid in tracking a single vehicle through traffic. The beeper (which police tricked Knotts into placing in the vehicle) augmented their visual surveillance of the vehicle and assisted them in following the vehicle to Knotts's secret drug laboratory. The Court held that the beeper-assisted surveillance did not constitute a Fourth Amendment "search" because the vehicle's route had been "voluntarily conveyed to anyone who wanted to look" at the public roads—and thus Knotts could not assert a privacy interest in the information obtained. 460 U.S. at 281.

*Carpenter* distinguished *Knotts* based on the "rudimentary" tracking at issue in the earlier case, as well as "the 'limited use which the government made of the signals from this particular beeper' during a discrete 'automotive journey.'" 138 S. Ct. at 2215

---

obtained the cell-site records from Carpenter's cell-service provider, not from Carpenter himself. Unlike law-enforcement officials in *Carpenter*, Defendants cannot rely on the third-party doctrine here because they are obtaining their ALPR data as a result of their direct surveillance of Plaintiffs.

10

(quoting *Knotts*, 460 U.S. at 284). The Court concluded that "different [Fourth Amendment] principles" should apply to "the more sophisticated surveillance" developed in ensuing decades. *Ibid.* It noted that in *Jones* (decided three decades after *Knotts*), a majority of the justices had concluded that longer-term, continuous monitoring of criminal suspects' movements using modern surveillance techniques impinges on reasonable expectations of privacy—"regardless whether those movements were disclosed to the public at large." *Ibid.* (quoting *Jones*, 565 U.S. at 430 (opinion of Alito, J.); *id.* at 415 (opinion of Sotomayor, J.)).

*Carpenter* concluded that using cell-site records to track the defendant's movements constituted a Fourth Amendment "search," even though the movements occurred in public view, because similar comprehensive tracking by individual police officers watching public roads is not possible. 138 U.S. at 2217. The Court explained:

> Prior to the digital age, law enforcement might have pursued a suspect for a brief stretch, but doing so "for any extended period of time was difficult and costly and therefore rarely undertaken." ... For that reason, "society's expectation has been that law enforcement agents and others would not—and indeed, in the main, simply could not—secretly monitor and catalogue every single movement of an individual's car for a very long period."

*Ibid.* (quoting *Jones*, 565 U.S. at 429, 430 (Alito, J., concurring in judgment)).

Many recent lower-court decisions have applied *Carpenter* to conclude that longer-term electronic government surveillance constitutes a Fourth Amendment "search" even when the surveillance occurs in areas readily accessible to the public. For example, the *en banc* Fourth Circuit held in *Leaders of a Beautiful Struggle* that Baltimore's aerial

11

surveillance program, under which the city retained for 45 days photographs taken by planes that flew over the city for 40 hours each week, likely violated the Fourth Amendment privacy rights of Baltimore residents—and thus the court granted a preliminary injunction against the program. 2 F.4th at 340-42 (holding that because Baltimore's surveillance program "opens 'an intimate window' into a person's associations and activities, it violates the reasonable expectation of privacy individuals have in the whole of their movements.") The court said that "people understand" they might be followed by a police officer "for a time" while outside; but that Baltimore's program, although limited to recording movement on city streets, "is not 'short-term' and transcends mere augmentation of ordinary police capabilities." *Id.* at 345.

Similarly, the Colorado Supreme Court held that police violated a homeowner's Fourth Amendment privacy rights by secretly placing a pole camera across the street from his house without a warrant and using it to film activity outside the house for three months—including activity behind the homeowner's six-foot fence that could not be observed at street level but that was readily observable from neighboring properties. *Tafoya*, 494 P.3d at 623. The court rejected prosecutors' argument that the property's exposure to public view eliminated the homeowner's privacy rights, explaining:

> Public exposure of an area may diminish one's reasonable expectation of privacy, but "[a] person does not surrender all Fourth Amendment protection by venturing into the public sphere. To the contrary, what [one] seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected."

*Ibid.* (quoting *Carpenter*, 138 S. Ct. at 2217).

A federal district court in Massachusetts reached the same conclusion in a case factually similar to *Tafoya*—a pole camera erected across the street from the defendant's house captured video of events occurring outside the house for eight months. *United States v. Moore-Bush*, 381 F. Supp. 3d 139 (D. Mass. 2019). The court held that government surveillance exceeded "objectively reasonable expectations of privacy," citing *Carpenter* as its basis for rejecting the government's contention that the defendant's activities "in an area accessible to the public" were not subject to Fourth Amendment privacy protection. *Id.* at 144.[3] The district court also noted *Carpenter*'s disapproval of a particularly intrusive aspect of long-term electronic surveillance methods:

> The Supreme Court distinguished the tracking involved in *Carpenter* from historical surveillance methods on the ground that the tracking produced a log that law enforcement officers could use to "travel back in time to retrace a person's whereabouts" whereas "a dearth of records and the frailties of recollection" limited surveillance in the past.

*Id.* at 145 (quoting *Carpenter*, 138 S. Ct. at 2218).

## C.   Fourth Amendment Decisions Cited by Defendants Do Not Support Their Position

Defendants contend that "numerous federal courts have rejected [the] theory" that "the aggregation of ALPR data captured in *public view*, subject to statutory retention

---

[3] The *en banc* First Circuit is currently considering the government's appeal from the district court decision.

periods, amounts to a warrantless search." Def. Mot. 11.[4] That contention is incorrect; Defendants have cited *no* appellate decisions that so hold, and there are none.

Moreover, Defendants have inaccurately described a number of the decisions they cite. For example, they assert that *United States v. Yang*, 958 F.3d 851 (9th Cir. 2020), "affirm[ed] denial of a motion to suppress because the use of an ALPR database was not a Fourth Amendment search as it did not reveal 'the whole of [the defendant's] physical movements.'" That case description is misleading in multiple respects. First, the quoted passage appears in an opinion concurring in the judgment, not the appeals court's decision. *See id.* at 863 (Bea, J., concurring in judgment). Second, the court never reached the merits of the defendant's claim that police violated his Fourth Amendment rights when they consulted a *private* ALPR database to seek location information for an SUV owned by a car-rental company. It ruled instead that the defendant lacked standing to object to the data search because he had no right to possess the SUV—he failed to return the vehicle when his lease expired, and the rental car company thereafter had sought to disable the vehicle remotely. *Id.* at 858-62. Third, Judge Bea's concurring opinion strongly supports Plaintiffs' position. He noted that the ALPR records consulted by police contained only one sighting of the SUV—and concluded that obtaining that single data point did not constitute a Fourth Amendment search because it "exposed

---

[4] In defense of their decision to retain ALPR data for three years, Defendants repeatedly assert that they are required by state law to do so. That assertion is incorrect. Guidelines issued by Florida's Criminal and Juvenile Justice Information System Council state that ALPR data may not be retained for more than three years, but they do not specify a minimum retention period. Complaint ¶¶ 36-37.

nothing else about his 'particular movements' whatsoever." *Id.* at 863 (Bea, J., concurring in judgment). But he warned that a larger-scale ALPR program *would* create serious privacy concerns:

> ALPRs can effortlessly, and automatically, create voluminous databases of vehicle location information. If enough data is collected and aggregated, this could have the ability to identify quickly and easily the precise whereabouts and lifestyle habits of those whose vehicle information is recorded. ALPRs also collect information without individualized suspicion, and records can be maintained for years.

*Ibid.*

Similarly misleading is Defendants' citation to *United States v. Rubin*, 556 F. Supp. 3d 1123 (N.D.Cal. 2021).[5] Defendants assert that the district court held that accessing an ALPR database is "not a Fourth Amendment search." Def. Mot. 10. The decision was, in fact, far more limited. The unidentified suspect in an armed robbery was observed leaving the scene of the robbery in a motor vehicle. Police entered the vehicle's license plate number into an ALPR system, which determined that the vehicle belonged to defendant Rubin and also provided location information for the vehicle on a handful of occasions. The district court held that the "limited information" about the suspect derived from accessing the ALPR database was not a Fourth Amendment "search," explaining that the database "did not provide significant information of value" and that "the information was not remotely comparable to the 'detailed, encyclopedic' information at issue in *Carpenter*. ... Unlike the cell-site location records there, the data

---

[5] Defendants state inaccurately that the decision was issued by the Northern District of Florida.

here provided no more information than what could have been obtained through police surveillance." 556 F. Supp. 3d at 1130 & n.3 (quoting *Carpenter*, 138 S. Ct. at 2216). The information at issue in *Rubin* is also "not remotely comparable" to Marco Island's ALPR system, which records information about each of the Plaintiffs (and every other resident of the City) hundreds of times per year.

## II.   PLAINTIFFS HAVE STATED A CLAIM FOR VIOLATION OF THEIR RIGHTS TO PRIVACY GUARANTEED BY THE FLORIDA CONSTITUTION

The privacy rights of Florida citizens are also protected by the Florida Constitution. Article I, section 12 of the Florida Constitution—which protects "[t]he right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures, and against the unreasonable interception of private communications by any means"—explicitly provides that its protections "shall be construed in conformity with" the Fourth Amendment. Accordingly, the Complaint states a claim under Article I, section 12 for the same reasons that it states a claim under the Fourth Amendment.

Article I, section 23 of the Florida Constitution, entitled "Right to Privacy," states that "[e]very natural person has the right to be let alone and free from governmental intrusion into the person's private life except as otherwise provided herein." The Florida Supreme Court has explained that the right to privacy protected by Article I, section 23 is "no less fundamental" than other rights protected by the Florida Constitution, *Weaver v. Myers*, 229 So. 3d 1118, 1130 (Fla. 2017), and is "broader, more fundamental, and

more highly guarded than any federal counterpart." *Id.* at 1125. The Complaint's factual allegations explain how Defendants' ALPR surveillance system interferes with Plaintiffs' "right to be let alone and free from governmental intrusion" into their private lives.

Defendants argue that Article I, section 23, "in the context of an alleged search or seizure, is coterminous with the interpretation and application of the Fourth Amendment." Def. Mot. 15. That argument is inconsistent with the Florida Supreme Court's repeated admonition that the protection provided to privacy rights by Article I, section 23, is *broader* than that afforded by the Fourth Amendment. *State v. Geiss*, 70 So. 3d 642 (Fla. 5th DCA 2011), on which Defendants rely for their "coterminous" argument, is inapposite. That decision held merely that the "probable cause" sufficient under the Fourth Amendment to justify issuance of a warrant (authorizing the drawing of blood from a DUI suspect) also sufficed under Article I, section 23. *Id.* at 646. *Geiss* does not hold that the definition of a government "search" is no broader under Article I, section 23 than under the Fourth Amendment. Any such holding would undermine "a principal aim" of Article I, section 23: "to afford individuals some protection against the increasing collection, retention, and use of information relating to all facets of an individual's life," *Rasmussen v. S. Fla. Blood Service, Inc.*, 500 So. 2d 533, 536 (1987), and to "ensure[ ] that individuals are able to determine for themselves when, how, and to what extent information about them is communicated to others." *Shaktman v. State*, 553 So. 2d 148, 150 (Fla. 1989).

17

Florida courts considering claims under Article I, section 23 have adopted an approach similar to that governing Fourth Amendment "search" claims: they carefully consider the facts of each case to determine whether a constitutional violation has occurred. *See, e.g., City of North Miami v. Kurtz*, 653 So. 2d 1025, 1028 (Fla. 1995) ("[d]etermining whether an individual has a legitimate expectation of privacy in any given case must be made by considering all the circumstances"). Such fact-intensive analyses are not appropriately conducted at the pleadings stage, where Plaintiffs' well-pleaded factual allegations must be accepted as true.

## III. DEFENDANTS' OTHER ARGUMENTS IN SUPPORT OF THEIR MOTION TO DISMISS ARE INSUBSTANTIAL

Defendants raise several other arguments in support of their motion to dismiss. None merits serious consideration.

Defendants argue that the Complaint should be dismissed as an impermissible "shotgun pleading" that fails to meet the requirements of Fed.R.Civ.P. 10(b) (requiring that each claim founded on a separate transaction or occurrence be stated in a separate count, "if doing so would promote clarity"). Defendants' "shotgun pleading" allegation is based on a fundamental misunderstanding of that term.

The Eleventh Circuit has explained that "the unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Weiland v. Palm Beach County Sheriff's Office*, 792

18

F.3d 1313, 1323 (11th Cir. 2015). Those considerations are not applicable here: the Complaint supplies clear notice of the occurrence complained of (Defendants' decision to install ALPRs and to retain all APLR data for three years) and the three constitutional provisions violated by that occurrence.

*Weiland* described the "paradigmatic shotgun pleading" as one "containing a variety of contract and tort claims interwoven in a haphazard fashion." *Id.* at 1320 (citation omitted). That description bears no resemblance to this Complaint, which raises three closely related constitutional claims arising from a single policy. Indeed, because the three claims arise from the same policy and all of the factual allegations support each claim, Rule 10(b) would have permitted all three claims to be incorporated into a single count. *Weiland*, 792 F.3d at 1325 n.18. To the extent that Defendants are honestly confused about the nature of Plaintiffs' claims, their proper response is to "move the court, pursuant to Rule 12(e), to require the plaintiff to file a more definite statement." *Id.* at 1321 n.10. But it is difficult to credit Defendants' claimed confusion, given their failure to point to any allegedly confusing sections of the Complaint.[6]

Defendants also seek to dismiss claims against Police Chief Tracy Frazzano in her official capacity, asserting that official-capacity claims against a municipal official

---

[6] Although the Complaint specifies the constitutional provisions that Defendants are alleged to have violated, they fault Plaintiffs for failing to identify a statute creating a right of action for asserting those claims.  Def. Mot. 7 n.3. That contention is frivolous. No statutory authority is necessary for citizens to seek *injunctive relief* against constitutional violations. *Davis v. Passman*, 442 U.S. 228, 242 (1979). Moreover, even if the Complaint had also sought *monetary relief* for the constitutional violations, Defendants themselves identify a statute (42 U.S. § 1983) that authorizes such relief.

are in essence claims against the municipality—and thus it is unnecessary to include both defendants. Def. Mot. 4. Plaintiffs are pleased that Frazzano is apparently conceding that she will abide by any injunction issued against the City. But plaintiffs routinely sue both cities and their officials to ensure full compliance with court orders, and Defendants have cited no authority requiring dismissal of one of the two claims.

CONCLUSION

The Court should deny the motion to dismiss.

Dated: April 26, 2022                    Respectfully submitted,

                                         NEW CIVIL LIBERTIES ALLIANCE
                                         1225 19th Street NW, Suite 450
                                         Washington, DC 20036
                                         202-869-5210

                                         By: /s/ Richard A. Samp
                                         Richard A. Samp, Virginia Bar No. 33856
                                         rich.samp@ncla.legal
                                         Sheng Li, Md. Bar No. 1508180001
                                         sheng.li@ncla.legal
Counsel for Plaintiffs

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was served by electronic filing on April 26, 2022, on all counsel of record on the Service List.

                                         /s/ Richard A. Samp

**Service List:**        Ann R. Flanigan, aflanigan@wsh-law.com
                         Kaitlyn N. Kelley, kkelley@wsh-law.com
                         Weiss Serota Helfman Cole & Bierman, P.L.
                         200 East Broward Blvd., Suite 1900
                         Fort Lauderdale, FL 33301

20