IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

Case No. 2:22-cv-00079-JLB-MRM

SHANNON SCHEMEL,
STEPHEN OVERMAN,
and MICHAEL TSCHINDA,

    Plaintiffs,

v.

CITY OF MARCO ISLAND, FLORIDA,

    Defendant.
_____/

**DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**

Defendant, City of Marco Island, Florida ("City"), pursuant to Federal Rule of Civil Procedure 12(b)(6), moves to dismiss the First Amended Complaint,[1] filed by Plaintiffs, Shannon Schemel, Stephen Overman, and Michael Tschinda (collectively "Plaintiffs") [ECF No. 50], and state as follows:

**OVERVIEW**

This case involves the City's use of an automated license plate recognition ("ALPR") system – fixed location cameras – on public roads. Plaintiffs filed their original complaint[2] [ECF No. 1] against the City and the City's police chief in her official capacity. Plaintiffs alleged that the City's use of the ALPR system –

---

[1] The First Amended Complaint is cited herein as "Am'd Compl., ¶ __."

[2] The original complaint is cited herein as "Compl., ¶ __."

WEISS SEROTA HELFMAN COLE & BIERMAN, P.L.

photographing <u>publicly visible</u> license plates at <u>publicly visible</u> locations and retaining the images over time (as required by state law) – violated the Fourth Amendment and Florida's constitutional right to privacy.  Relying on cases involving cellphone and GPS tracking, Plaintiffs claimed that the City's use of the ALPR system constituted an impermissible, warrantless search, requiring declaratory and injunctive relief.

The City moved to dismiss the original complaint on procedural and substantive grounds. ECF No. 25.  Procedurally, the City argued that the complaint was a shotgun pleading, in that it was rife with conclusory and vague allegations that made rendering an answer in response "nearly impossible."[3]  *Id.*, at 7.  On the merits, the City pointed out that there is no privacy interest in one's publicly visible license plate, and even if there was, the retention of images taken in public view does not amount to a warrantless search.  The City explained that cellphone and GPS tracking amounts to a warrantless search because it involves surveillance of one's movement in public <u>and private</u> spaces.  Because the City's use of the ALPR system involved capturing images of license plates in only public spaces, the City argued that Plaintiffs failed to state a federal or Florida constitutional claim.

Plaintiffs failed to heed the City's warnings before the Court dismissed their complaint without prejudice [ECF No. 44] (herein cited as "Order, at __").  The Court

---

[3]     In addition, the City pointed out that Plaintiffs' official capacity claim against the police chief was duplicative of their claims against the City.  The Court agreed and concluded that "the claims against [the police chief] in her official capacity are due to be dismissed without prejudice." ECF No. 44.  Plaintiffs do not name the police chief as a party in the First Amended Complaint.  *See generally*, Am'd Compl.

2

agreed with the City on both procedural and substantive grounds. Specifically, the Court found that Plaintiffs' Complaint was a shotgun pleading, in that it "[did] not sufficiently delineate the privacy rights [Plaintiffs] seek to protect." Order, at 6. On the merits, the Court acknowledged the well-established rule that motorists have no reasonable expectation of privacy in their license plates and distinguished the City's use of the ALPR system from cases involving cellphone and GPS tracking, "which track the movements of individuals beyond public thoroughfares[.]" Order, at 9.

Now, Plaintiffs again fail to heed the City's and the Court's warnings, and dismissal of the Amended Complaint <u>with prejudice</u> is merited. Specifically, despite remedying the procedural defects inherent in the original Complaint, Plaintiffs' First Amended Complaint contains the same substantive defects that doomed the original pleading. For the second time, Plaintiffs' constitutional claims rely on the tenuous theories that (1) the privacy interest in the "whole of their physical movements" is implicated when they drive cars on public thoroughfares; and (2) by collecting and retaining the photographs of their publicly visible license plates at publicly visible locations, the City conducts a warrantless "search" in violation of their alleged privacy interest. Am'd Compl., ¶¶ 52, 62. In reality, as was the problem with the original complaint, Plaintiffs' theories fail to sufficiently allege a privacy interest or a "search" within the meaning of the Fourth Amendment and Florida Constitution. Instead, for the second time, Plaintiffs essentially ask this Court "to rewrite and expansively redraw the bounds of federal and state constitutional law." ECF No. 25, at 2. This

3

Court should decline that request and dismiss Plaintiffs' First Amended Complaint with prejudice.

## MEMORANDUM OF LAW

### I. COUNTS I THROUGH III FAIL TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

Plaintiffs' First Amended Complaint contains the same substantive defects that doomed the original complaint. For the second time, Plaintiffs cannot state a claim because (1) they do not have a privacy interest in their license plate numbers; and (2) the City's collection and retention of ALPR data does not constitute a search under federal or Florida law. By extension, Plaintiffs cannot state a claim that the City violated their right to privacy under the Florida Constitution.

### a. *Plaintiffs Have Not Stated a Claim for a Fourth Amendment or an Article I, Section 12 Violation of the Florida Constitution.*[4]

Counts I and II seek a declaration that the City violated Plaintiffs' Fourth Amendment rights under the U.S. Constitution and Article I, Section 12 of the Florida

---

[4] In addition to the substantive pleading failures discussed herein, Count I fails to state a claim on its face because Plaintiffs fail to invoke any enabling legislation. Indeed, while they purport to invoke this Court's federal question jurisdiction, pursuant to 28 U.S.C. § 1331, the Fourth Amendment—in and of itself—is not a private cause of action. Rather, Plaintiffs must cite some enabling legislation to state a cause of action of the alleged violation of federal constitutional rights by persons acting under color of state law. *See, e.g., Monell v. Dep't of Soc. Servs. Of New York*, 436 U.S. 658, 690-91 (1978) (recognizing that 42 U.S.C. § 1983 creates a private cause of action for alleged constitutional injuries caused by a government entity's official policy or custom). Plaintiffs fail to invoke any enabling legislation (such as Section 1983) that would create a private cause of action against the City as to Count I, meriting dismissal of this claim on this additional basis.

Constitution, by using the ALPR system to collect and retain data on Plaintiffs' "daily movement," as well as an injunction from retaining data gathered from use of the ALPR system. Am'd Compl., ¶¶ 49-80. Because Article I, Section 12 of the Florida Constitution states that "[t]his right shall be construed in conformity with the 4th Amendment to the United States Constitution, as interpreted by the United States Supreme Court," both Counts I and II fail to state a claim under Rule 12(b)(6) together.

### 1. Plaintiffs do not have a reasonable expectation of privacy in their license plate number.

The protections of the Fourth Amendment can only be invoked when the claimant "has a reasonable expectation of privacy in the invaded place." *See State v. Markus*, 211 So. 3d 894, 902 (Fla. 2017) (citing *Minnesota v. Olson*, 110 S. Ct. 1684, 1687 (1990)). This expectation of privacy requires both a subjective expectation of privacy as well as an objectively reasonable expectation as determined by societal standards. *See Smith v. Maryland*, 442 U.S. 735, 740-41 (1979) (discussing the Fourth Amendment's reasonable expectation of privacy standard).

As explained in the City's first motion to dismiss, no objectively reasonable expectation of privacy exists in ALPR data captured solely in plain sight of the public on public roadways. In *United States v. Knotts*, the U.S. Supreme Court held as follows:

> *A person travelling in an automobile on public thoroughfares has no reasonable expectation of privacy in his movements from one place to another.* When [co- defendant] travelled over the public streets he voluntarily conveyed to anyone who wanted to look the fact that he was travelling over particular roads in a particular direction, the

> fact of whatever stops he made, and the fact of his final destination when he exited from public roads onto private property.

460 U.S. 276, 281-82 (1983) (emphasis added).

For this reason, federal courts have routinely and consistently held that one does not have a reasonable expectation of privacy in images of his or her plainly visible license plate. *See, e.g.*, *United States v. Wilcox*, 415 F. App'x 990, 992 (11th Cir. 2011) (affirming ruling that criminal defendant "did not have a reasonable expectation of privacy in the plainly visible license plate" and that the use of a license plate "tag reader" did not violate the Fourth Amendment); *United States v. Miranda-Sotolongo*, 827 F.3d 663, 668 (7th Cir. 2016) (holding that police officer's use of a suspect's tag number to retrieve registration information in a law enforcement database was not a "search" because the suspect had no reasonable expectation of privacy since the database contained only non-private information); *United States v. Ellison*, 462 F.3d 557, 561-63 (6th Cir. 2006) (rejecting an argument that storing and retrieving a motorist's information using a license plate reader program amounted to an unlawful warrantless search and stating that "[e]very court that has addressed this issue has reached the same conclusion."); *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 529 (5th Cir. 1999) (rejecting argument that computer check of license plate required a warrant because "[a] motorist has no privacy interest in her license plate number," which "is constantly

WEISS SEROTA HELFMAN COLE & BIERMAN, P.L.

open to the plain view of passersby"). Plaintiffs' renewed challenge to the ALPR system here is no different for purposes of the Fourth Amendment.[5]

Plaintiffs attempt to avoid this well-established rule by relying on the privacy interest in the "whole of [one's] physical movements," as recognized in *Carpenter v. U.S.*, 138 S.Ct. 2206, 2217 (2018) (citing *U.S. v. Jones*, 565 U.S. 400, 430 (2012) (Alito, J., concurring)). Am'd Compl., ¶¶ 52, 58, 62, 63, 67, 69, 70, 71. However, Plaintiffs' strategy fails, because no matter how they attempt to frame the implicated privacy interest, the substance of the amended allegations shows that, again, Plaintiffs really take issue with the City photographing their license plates. After all, they are

---

[5] Furthermore, there is an overwhelming amount of court decisions upholding the use of ALPR systems – like the one at issue in this case – against constitutional challenges. *See United States v. Yang,* 958 F.3d 851 (9th Cir. 2020) (affirming denial of motion to suppress because the use of an ALPR database was not a Fourth Amendment search as it did not reveal "the whole of [the defendant's] physical movements"); *United States v. Walraven*, 892 F.2d 972, 974 (10th Cir. 1989) (holding that running defendant's license plate through computer database did not implicate privacy interests); *USA v. Rubin*, No. 18-cr-00568-CRB-1, -- F. Supp. 3d --, 2021 WL 3773609 (N.D. Fla. Aug. 25, 2021) (declining to suppress evidence "[b]ecause accessing the ALPR database was not a Fourth Amendment search"); *Chaney v. City of Albany*, No. 6:16-CV-1185, 2019 WL 3857995, at *8–9 (N.D.N.Y. Aug. 16, 2019) (holding that "use of the LPR technology did not violate Plaintiffs' Fourth Amendment rights because he had no reasonable expectation of privacy in his license plate information while traveling on public roads," and observing that the ALPR system recorded "without any particular focus on specific individuals" and only recorded "the occasions when [a vehicle] passed a camera"); *Uhunmwangho v. State*, No. 09-19-00119-CR, 2020 WL 1442640 (Tex. App. Mar. 25, 2020), at *1, 6-9 (rejecting a Fourth Amendment challenge to the use of an ALPR system).

Indeed, Plaintiffs cannot point to <u>any</u> on-point precedent demonstrating that they have an objective (let alone subjective) interest in their license plate number or their readily observable movements on public roadways.

challenging the "automated *license plate recognition* system" (emphasis added). Am'd Compl. at ¶ 2. For example, despite lofty reference to the "whole of their physical movements" in various allegations, in paragraph 58, Plaintiffs reveal the true nature of their constitutional claims:

> By strategically placing ALPRs on each of the bridges leading into and out of Marco Island and operating them continuously since April 23, 2021, the City has succeeded in logging the location of Plaintiffs and their vehicles every day on multiple occasions, thereby providing the City with detailed information regarding the whole of their movements for years on end.

Am'd Compl., ¶ 58 (emphasis added). According to the Amended Complaint, the City "logs" the Plaintiffs "movements" by "mounting ALPRs at each of three bridges" and "photograph[ing] and record[ing] the license plate information of every vehicle that passes by." Am'd Compl., ¶¶ 3, 58.[6] Despite their semantic attempt to assert a valid privacy interest, Plaintiffs cannot escape the substantive basis of their constitutional challenge: the City photographing their license plates.

This Court, relying on well-established precedent, has already recognized that motorists have "no reasonable expectation of privacy in the information contained on

---

[6] Indeed, the substance of the allegations in the First Amended Complaint are no different from those contained in the original Complaint. *Compare* Am'd Compl., ¶¶ 3, 58, *with* Compl., ¶¶ 2, 60 ("The ALPRs photograph and record the license-plate information of ever vehicle that passes by . . . The City's continuous monitoring of Plaintiffs' movements . . . impinges on their reasonable expectation of privacy in the whole of their physical movements."). In fact, a review of the First Amended Complaint reflects that Plaintiffs have merely re-pled the factual allegations, as well as the majority of the allegations within each cause of action, originally contained in the now-dismissed, initial pleading. *Compare* Am'd Compl., *with* Compl.

8

[their] license plate[s] under the Fourth Amendment." Order, at 9 (quoting *Ellison*, 462 F.3d at 561). Therefore, Plaintiffs have not alleged (and cannot allege) facts sufficient to show that the City plausibly violated their federal Fourth Amendment rights as well as their rights under Article I, Section 12 rights under the Florida Constitution because they cannot identify any underlying expectation of privacy.

### 2. The City's collection and retention of ALPR data does not constitute a search.

Plaintiffs also assert that the City's collection and retention of individual images of their license plate scans over a three-year data retention period somehow constitutes a "search" within the meaning of the Fourth Amendment and Article I, Section 12, of the Florida Constitution. Am'd Compl., ¶¶ 62, 71, 78.[7] In doing so, again, Plaintiffs impermissibly ask this Court to expand and revise the definition of a "search" under federal and Florida law. *See* ECF No. 25, at 11.

Indeed, there is no authority supporting the proposition that the collection and retention of ALPR data captured in public view, subject to statutory retention periods, amounts to a warrantless search. In fact, numerous federal courts have rejected this

---

[7] Plaintiffs' assertion that the City "collect[s] detailed information about Plaintiffs and their daily movements" is unfaithful to the allegations upon which their assertion rests. Am'd Compl., ¶¶ 49, 62. As explained in the prior section (*see* I.a.1), according to the Amended Complaint, the City "collects" "detailed information" about Plaintiffs "daily movements" by "mounting ALPRs at each of three bridges" and "photograph[ing] and record[ing] the license plate information of every vehicle that passes by." Am'd Compl., ¶ ¶ 3, 58. It can hardly be said that photographing one's license plate from three fixed physical locations is akin to "collecting detailed information" about one's "daily movements."

theory, including specifically in the context of camera images gathered from public view. *See, e.g.*, *United States v. Houston*, 813 F.3d 282, 287-89 (6th Cir. 2016) (finding no reasonable expectation of privacy surrounding the warrantless use of video cameras that were directed, full time, at an individual's property, because it captured the same views enjoyed by passersby on public roads; and finding that the length of time of that surveillance was not relevant); *United States v. Bucci*, 582 F.3d 108, 116-17 (1st Cir. 2009) (holding that eight month-long video surveillance of defendant's driveway and garage door did not violate his Fourth Amendment rights because those activities were conducted in public, and noting that the defendant's "lack of a reasonable objective expectation of privacy" was "clear"); *United States v. Mazzara*, 2017 WL 4862793 at *11-12 (S.D.N.Y. Oct. 27, 2017) (holding that 21 months of warrantless video camera surveillance of a residence from across the street did not violate Fourth Amendment); *United States v. Moore*, 2014 WL 4639419, at *3-4 (S.D. Fla. Sept. 16, 2014) (upholding warrantless police video surveillance of an individual over eight months using six video cameras, and rejecting argument that the length of the surveillance changed the Fourth Amendment analysis); *United States v. Aguilera*, 2008 WL 375210 at *2 (E.D. Wis. Feb. 11, 2008) (denying motion to suppress evidence from warrantless video surveillance because "[t]he police could have stood on the street outside defendant's house and observed the comings and goings from his driveway; substitution of a camera for in-person surveillance does not offend the Fourth Amendment; and the camera did not record activities within defendant's home or its curtilage obscured from

public view"); *Raul Max Canosa v. City of Coral Gables, et al.,* No. 2018-033927-CA-01 (11th Cir. Ct. in and for Miami-Dade Cty., Fla., Oct. 4, 2021) (granting summary judgment for the City of Coral Gables because the collection of ALPR data does not constitute a constitutional "search").  Oddly, Plaintiffs even admit, "When the government uses pole cameras to take isolated photographs of events occurring at a particular location, it does *not* engage in a 'search' within the meaning of the U.S. and Florida Constitutions."  Am'd Compl., ¶ 5 (emphasis added).

Plaintiffs cite several cases within their Complaint, seemingly in an effort to manufacture their alleged constitutional claims. *See* Am'd Compl., ¶¶ 6, 53, 54, 65, 69, 70, 77 (citing *Carpenter v. United States*, 138 S. Ct. 2206 (2018); *United States v. Jones*, 565 U.S. 400 (2012); *Tracey v. State*, 152 So.3d 504, 525 (Fla. 2014)).  None of these cases, however, applies here.

Specifically, *Carpenter* addressed the government's warrantless acquisition of the defendant's cell phone location, which catalogued the defendant's movements in both public and private spaces for several months.  138 S. Ct. at 2209.  The Supreme Court found that particular collection of data was a Fourth Amendment violation because it gave the government "near perfect surveillance" of the defendants' comings and goings everywhere, not just in public (unlike here). *Id.* at 2209-10.  Indeed, the Court explicitly distinguished surveillance of a vehicle's location because "[w]hile individuals regularly leave their vehicles, they compulsively carry cell phones with them all the time," and "[a] cell phone faithfully follows its owner beyond public

thoroughfares." *Id.* at 2218 (emphasis added). Moreover, the *Carpenter* Court expressly stated that its opinion "do[es] not … call into question conventional surveillance techniques and tools, such as security cameras." *Id.* at 2220.

Similarly, Plaintiffs' reliance on *United States v. Jones* fails to demonstrate any state or federal constitutional violations have occurred through the use of the City's ALPR system. *Jones* involved the use of GPS-tracking device physically attached the defendant's vehicle without a warrant. 565 U.S. at 402-03. The Supreme Court found that the physical attachment of the GPS device to the vehicle amount to common law trespass of the defendant's property. In so holding, the *Jones* Court state that "[i]t is important to be clear about what occurred in this case: The Government physically occupied private property for the purpose of obtaining information." *Id*. (emphasis added). Here, on the other hand, there is no physical occupation of any aspect of Plaintiffs' vehicles (nor do Plaintiffs allege as such). The City merely captures publicly displayed license plates (which Florida law requires to be shown, pursuant to § 316.605, Fla. Stat.) at individual points on certain public thoroughfares. Accordingly, *Jones* is not applicable here.

Finally, Plaintiffs cite to *Tracey v. State*, 152 So.3d 504, 525 (Fla. 2014), in support of their Florida constitutional claims. As was true of the original pleading, the First Amended Complaint's reliance on *Tracey* fails to move the ball towards a prima facie case under Rule 12(b)(6). Like in *Carpernter*, *Tracey* addressed government surveillance of the defendant's cell phone data through cell site location information.

*Id.* Unlike here, the government's cell site surveillance provided information of the defendant's <u>private</u> location, specifically, his residence and thus invaded his subjective expectation of privacy. *Id.* Plaintiffs do not (and cannot possibly) allege that the City has conducted any surveillance of their <u>private</u> whereabouts in this case. *See generally*, Am'd Compl., ¶¶ 1-48. They also do not allege (nor can they) that the retention of this data for the statutorily regulated, three-year period provides any information about their <u>private</u> whereabouts. *Id.* Indeed, on the face of the Complaint, the affirmative allegations are that the City has license plate readers set up in discrete, public locations to capture an image of a license plate as a vehicle passes by the camera. Am'd Compl., ¶¶ 3, 17-18, 34-36.

Plaintiffs' own recognition that isolated photographs of events in public do not amount to a constitutional search should be fatal to their claims here. Not only do they recognize that there is no privacy interest in their plainly visible license plates or their public coming-and-goings, they affirmatively acknowledge that the retention period is <u>statutory</u>. Am'd Compl, ¶¶ 45-47 (citing § 316.0778(2), Fla. Stat. (requiring state law officials to establish a retention schedule for ALPR systems) and the corresponding CJJIS ALPR Guidelines).[8]

---

[8] As stated in the Complaint, the CJJIS "Guidelines for the Use of Automated License Plate Readers" provide that ALPR data "gathered without specific suspicion may be retained for no longer than 3 anniversary years." Guidelines, §6(e); Am'd Compl., ¶¶ 46-47; *see also* Fla. Admin Code 1B-24.003(1)(b) (setting forth Florida's records retention schedule for various records).

As this Court has already explained, "[c]ases involving cellphone and GPS tracking – which track the movements of individuals beyond public thoroughfares – are distinguishable from fixed location cameras recording images of license plates on public roads." Order, at 9. Accordingly, Counts I and II fail to state a claim because there is no underlying privacy interest at stake, and the City has not engaged in a "search" within the meaning of federal or Florida constitutional law.

### b. *Plaintiffs Have Not Stated a Claim for an Article I, Section 23 Violation of the Florida Constitution in Count III.*

Finally, Plaintiffs assert a standalone cause of action in Count III for a violation of Article I, Section 23 of the Florida Constitution. However, Plaintiffs have again

---

To the extent Plaintiffs draw into the question the constitutionality of section 316.0778(2), the retention schedule mandated by Fla. Admin Code 1B-24.003(1)(b), or the CJJIS ALPR guidelines, they have failed to satisfy the requirements of Federal Rule of Procedure 5.1(a)(1)(B). Plaintiffs' challenge to the City's three-year retention of ALPR data is, in fact, an improper challenge to Fla. Admin Code 1B-24.003(1)(b)—the records retention rules promulgated by the Florida Department of State ("FDOS").

Moreover, a related matter initially filed in Miami-Dade Circuit Court also challenged FDOS' data retention rules in Fla. Admin Code 1B-24.003(1)(b). *See* ECF No. 45-1, Complaint, *Raul Mas Canosa v. City of Coral Gables, et al.,* No. 2018-033927-CA. Following removal of the claim against the FDOS to the proper venue, the Second Circuit Court in and for Leon County, the court dismissed the claims against the FDOS with prejudice, which the plaintiff did not appeal. *See Raul Mas Canosa v. FDOS, et al.*, No. 2019-CA-2813 (2d Cir. Ct. in and for Leon Cnty., March 11, 2021). The remaining claims in the Miami-Dade action were not transferred to Leon County and are currently pending before Florida's Third District Court of Appeal. In their Notice of State-Court Proceedings [ECF No. 45], Plaintiffs omit filings from the *Canosa* case in Leon County. *See* note 9, *infra*.

failed to state a claim in Count III for the same reasons as explained in the preceding sections.

Article I, Section 23 provides a right of privacy under the Florida Constitution which, in the context of an alleged search or seizure, is coterminous with the interpretation and application of the Fourth Amendment (and with the parallel provision in Article 1, Section 12 of the Florida Constitution). *See e.g., State v. Geiss*, 70 So. 3d 642, 645-46 (Fla. 5th DCA 2011) ("[T]he 'except as otherwise provided herein' language of article 1, section 23 must be read as authorizing governmental intrusion into one's personal life to the same measure [as allowed under the Fourth Amendment by the U.S. Supreme Court.]). Notably,

> The Florida Supreme Court has adopted a test to assess the claim of an article I, section 23 privacy violation: First, courts must determine whether the individual possesses a legitimate expectation of privacy in the information or subject at issue. If so, the burden shifts to the State to show (a) that there is a compelling state interest warranting the intrusion into the individual's privacy and (b) that the intrusion is accomplished by the least intrusive means.

*Joseph v. Sec'y, Dep't of Corr.*, No. 8:16-CV-3415-T-33SPF, 2018 WL 4301554, at *7–8 (M.D. Fla. Sept. 10, 2018) (quoting *State v. Tamulonis*, 39 So.3d 524, 528 (Fla. 2d DCA 2010)) (additional internal quotations omitted); *see also Bd. of Cty. Comm'rs of Palm Beach Cty. v. D.B.*, 784 So. 2d 585, 588, 590 (Fla. 4th DCA 2001) (explaining that, under Art. I, § 23, "before the right to privacy attaches and the standard is applied, a reasonable expectation of privacy must exist."); *City of N. Miami v. Kurtz*, 653 So. 2d 1025, 1028 (Fla. 1995) ("[T]o determine whether Kurtz … is entitled to protection under [A]rticle

I, section 23, we must first determine whether a governmental entity is intruding into an aspect of Kurtz's life in which she has a 'legitimate expectation of privacy.'").

Count III must be dismissed for the same reasons as Counts I and II because, as set forth, *supra*, Plaintiffs lack a legitimate expectation of privacy here. Indeed, all three claims rely on the same allegations of harm, i.e., the recording, collection, and retention of ALPR data from plainly visible license plates of vehicles on public thoroughfares using cameras located on public property. Am'd Compl., ¶¶ 24-48. As with Counts I and II, Count III improperly asks this Court to create a right of privacy where none exists.

Moreover, in Count III, Plaintiffs allege that the City does not have a compelling interest in "collecting and retaining information about Plaintiffs' movements for an extended period of time or three or more years its records of Plaintiffs' movements[.]" Am'd Compl., ¶ 91. However, this claim is flawed because Plaintiffs affirmatively allege that the retention schedule for ALPR data is set by Florida statute. *See* Am'd Compl., ¶ 45 (citing § 316.0778(2), Fla. Stat.). Indeed, Florida law requires FDOS, in consultation with the Florida Department of Law Enforcement ("FDLE"), to "establish a retention schedule for records containing images and data generated through of an [ALPR] system. The retention schedule must establish a maximum period that the records may be retained." § 316.0778(2), Fla. Stat. Further—and as affirmatively alleged in Plaintiffs' Amended Complaint and as required by Florida statute, FDOS (in consultation with the FDLE) has issued said

retention schedule setting forth <u>a three-year maximum retention period for ALPR records</u>, unless required to be retained under another rule. Rule 1B-24.003(1)(b), Fla. Admin. Code; FDOS General Records Schedule GS2; *see also* Am'd Compl., ¶ 47 (citing the FDLE's Guidelines, § 6(e)). And as Plaintiffs allege, the City has stated it will maintain ALPR records for a three year maximum, absent specific suspicion. Am'd Compl., ¶ 44. In other words, Plaintiffs <u>affirmatively allege</u> that the City is compliant with Florida law.

In reality, Plaintiffs appear to be challenging FDOS's data retention rules and the FDLE's ALPR guidelines—claims which have already been litigated, resulting in a judgment in favor of the FDLE and FDOS. *See Raul Mas Canosa v. City of Coral Gables, et al.,* No. 2018-033927-CA (granting summary judgment in favor of the FDLE because it did not violate the plaintiff's rights by issuing and setting the ALPR guidelines); *Raul Mas Canosa v. FDOS, et al.*, No. 2019-CA-2813 (2d Cir. Ct. in and for Leon Cnty., March 11, 2021) (dismissing the challenge to Fla. Admin. Code 1B-24.003(1)(b) with prejudice).[9] Because Plaintiffs have not identified any legitimate

---

[9]   In the Order dismissing Plaintiffs' original complaint, the Court required Plaintiffs' counsel to file a notice providing copies of the proceedings in the related *Canosa* case. Order, at 10. Plaintiffs' Notice of State-Court Proceedings [ECF No. 45] includes the *Canosa* trial court's "Amended Order on Parties' Cross Motion For Summary Judgment." ECF No. 45-3, at 56. In that order, the trial court determined that the city was entitled to summary judgment because (1) there was no objectively reasonable expectation of privacy in "ALPR data captured solely in plain sight of the public on public roadways"; (2) "aggregation of ALPR data captured in public view does not transform those public images into private information"; and (3) the plaintiff's reliance on cases involving "cellphone location data" – including *Carpenter* and *Jones* – was "unpersuasive." ECF No. 45-3 at 62-68.

privacy interest nor any facts showing how the City is violating such interest—indeed, they allege the opposite, that the City is complaint with Florida law— Count III must also be dismissed for failure to state a claim.

## II. COUNTS I THROUGH III SHOULD BE DISMISSED WITH PREJUDICE.

Finally, Plaintiffs' claims should be dismissed with prejudice because even as amended, their claims still fail to state a cause of action and further leave to amend would be futile. *Wade v. Daniels*, 36 F. 4th 1318, 1328 (11th Cir. 2022) (quoting *Hall v. United Ins. Co. of Am.*, 367 F.3d 1255, 1263 (11th Cir. 2004)) ("Leave to amend is futile if 'the complaint as amended is still subject to dismissal.'"); *Hall v. United Ins. Co. of Am.*, 367 F.3d 1255, 1262-63 (11th Cir. 2004) (citation omitted) ("[A] district court may properly deny leave to amend the complaint under Rule 15(a) when such amendment would be futile.").

Moreover, "[a] district court is not required to grant a plaintiff leave to amend his complaint sua sponte when the plaintiff, who is represented by counsel, never filed a motion to amend nor requested leave to amend before the district court." *Wagner v. Daewoo Heavy Indus. Am. Corp.*, 314 F.3d 541, 542 (11th Cir. 2002). Plaintiffs never

---

The trial court's summary judgment for the City of Coral Gables is currently pending appeal to the Florida Third District Court of Appeal in Case No. 3D21-1983. On appeal, the *Canosa* plaintiff challenges whether the City of Coral Gable's ALPR regime" violates the federal and Florida constitutional "right to privacy." ECF No. 45-4, at 82, 106-130. The Third District heard oral argument on the matter on March 8, 2023, and has not yet issued an opinion as of the date of this filing.

filed a motion to amend their pleading before the August 3, 2022 deadline to amend the pleadings (or even after said deadline). *See* ECF No. 39. Allowing them a third opportunity to amend their complaint via a dismissal without prejudice is not merited. The Eleventh Circuit has "never required district courts to grant counseled plaintiffs more than one opportunity to amend a deficient complaint, nor have we concluded that dismissal with prejudice is inappropriate where a counseled plaintiff has failed to cure a deficient pleading after having been offered ample opportunity to do so." *Eiber Radiology, Inc. v. Toshiba Am. Med. Sys., Inc.*, 673 F. App'x 925, 930 (11th Cir. 2016). Accordingly, because for a second time Plaintiffs have failed to state a claim upon which relief can be granted, *see supra*, Section I and II, Plaintiffs' action merits dismissal with prejudice.

## CONCLUSION

Plaintiffs' First Amended Complaint should be dismissed on substantive grounds. Plaintiffs have not (and cannot) state a substantive cause of action under the Fourth Amendment or its Florida counterparts. Accordingly, the City respectfully request dismissal of the Amended Complaint with prejudice.

## LOCAL RULE 3.01(g) CERTIFICATION

Counsel for the City certifies that she corresponded with Plaintiffs' Counsel on March 29, 2023, in an effort to meet and confer regarding Plaintiffs' position on this Motion. Plaintiffs oppose this Motion.

WHEREFORE, Defendant, City of Marco Island respectfully request an order granting the Motion to Dismiss, dismissing Plaintiffs' First Amended Complaint [ECF No. 50] in its entirety with prejudice, and granting any further relief that the Court deems appropriate.

Dated: April 4, 2023           Respectfully submitted,

                                    WEISS SEROTA HELFMAN
                                    COLE & BIERMAN, P.L.
                                    *Counsel for Defendant*
                                    200 East Broward Boulevard, Suite 1900
                                    Fort Lauderdale, FL  33301
                                    (954) 763-4242

                                    By: /s/  *Anne R. Flanigan*
                                          ANNE REILLY FLANIGAN
                                          Florida Bar No.: 113889
                                          Primary email: aflanigan@wsh-law.com
                                          Secondary email: pgrotto@wsh-law.com
                                          BLAYNE J. YUDIS
                                          Florida Bar No. 1026208
                                          Primary email: byudis@wsh-law.com
                                          Secondary email: lbrewley@wsh-law.com