IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

| | |
|---|---|
| **SHANNON SCHEMEL,** ) <br> **STEPHEN OVERMAN,** ) <br> and **MICHAEL TSCHIDA,** ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> **CITY OF MARCO ISLAND, FLORIDA**, ) <br> ) <br> Defendant. ) <br> _____ ) | **Case No.** <br> **2:22-cv-0079-JLB-KCD** |

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION
TO DISMISS FIRST AMENDED COMPLAINT**

**INTRODUCTION**

Plaintiffs, three law-abiding citizens of the City of Marco Island, are challenging the City's decision to install Automatic License Plate Recognition systems (ALPRs) at strategic locations throughout the Island and to maintain the information collected by the ALPRs for at least three years. They assert that the City's actions violate their legitimate expectations of privacy, in violation of the U.S. and Florida Constitutions.

In an Order dated February 14, 2023, the Court granted in part Defendants' Rule 12(b)(6) motion to dismiss the initial complaint for failure to state a claim. ECF-44. The Order stated, "As presently alleged, the Court is not persuaded that the facts of the Complaint state a constitutional claim, thus the Court will require Plaintiffs to amend their pleading to specifically delineate a constitutional violation." Order at 9. In

response, on March 7, 2023, Plaintiffs filed their first amended complaint ("Complaint"), setting out additional factual allegations supporting their claim. ECF-50. Defendant City of Marco Island responded on April 4, 2023, by filing a motion that once again seeks dismissal under Rule 12(b)(6).

The motion should be denied. Defendant argues that Plaintiffs have not stated a constitutional violation because they lack "a reasonable expectation of privacy in their license plate number[s]." Def. Mot. at 5. Defendant is mischaracterizing the privacy interest Plaintiffs assert. They have never sought to conceal their license plate numbers. Rather, they assert that Defendant is infringing their legitimate expectations of privacy by maintaining records for three years that disclose their daily movements and by sharing records with other law-enforcement agencies. Those records reveal intimate details of Plaintiffs' lives, including the precise moments when Plaintiffs are on Marco Island or away from the Island throughout the three-year record-retention period. Complaint ¶ 43.

The Supreme Court explicitly held in *Carpenter v. United States*, 138 S. Ct. 2206 (2018), that the government infringes citizens' reasonable expectations of privacy when it compiles detailed records of their physical movements over an extended period of time. Defendant's efforts to distinguish *Carpenter* are unavailing. Indeed, Defendant's surveillance of its law-abiding citizens is significantly *more* intrusive than the short-term cell-phone surveillance that the Supreme Court declared in *Carpenter* to violate Fourth Amendment rights.

Moreover, Defendant fails to address the many Florida court decisions holding that privacy rights protected by the Florida Constitution extend *more broadly* than those protected by the U.S. Constitution. Defendant makes no effort to demonstrate (as is required by the Florida Constitution) that its infringement of privacy rights is narrowly tailored and serves compelling governmental interests.

## STATEMENT OF THE CASE

The factual allegations underlying Plaintiffs' claims—which must be accepted as true for purposes of this motion to dismiss, *McGroarty v. Swearingen*, 977 F.3d 1302, 1306 (11th Cir. 2020)—are succinctly set out in ¶¶ 17-48 of the Complaint.

ALPRs are high-speed cameras capable of recording images of the license plates of all motor vehicles that come within their field of vision. They can be operated while mobile (*e.g.*, placed in a moving police car) or at a fixed location. One ALPR can record thousands of license plate images per minute. Complaint ¶ 17. Defendant City of Marco Island ("the City") began using its first ALPR in 2015—a mobile unit mounted on a squad car. Over the past seven years, this single unit has captured images of more than 1,000,000 license plates. *Id.* ¶¶ 24-25.

In April 2021, the City installed at least three new ALPRs at fixed locations. The city installed ALPRs on each of the two spans of the Jolley Bridge and a third ALPR on San Marco Road (at its intersection with Stevens Landing Drive) on the approach to the Gober Bridge. By installing ALPRs on or near the three bridges, the City ensures that *every* vehicle entering and exiting the Island is being photographed, 24 hours a day,

seven days a week. *Id.* ¶ 36. Indeed, the City stated explicitly that it chose the bridge locations to ensure 100% coverage of Island traffic. *Id.* ¶ 37.

ALPRs are connected to systems that convert the images of license plates into computer-readable data; the systems record license-plate number as well as the date, time, and location of the observation. *Id.* ¶ 18. The primary threat to personal privacy arises not from isolated capture of license plates but from the recording and aggregation of that data for extended periods of time. *Id.* ¶ 20. By retaining the data for three years (as the City is doing), law-enforcement personnel compile detailed information about the daily lives of individuals who are photographed regularly. *Id.* ¶¶ 20, 57. The privacy concerns are compounded when, as here, police departments share all their information about innocent motorists with other law-enforcement agencies. *Id.* ¶¶ 21, 54.

The principal means of transportation for Plaintiffs are their cars and trucks. They regularly drive their vehicles in connection with their everyday activities; *e.g.*, shopping, commuting to work, visiting friends, and attending meetings. They enter and exit Marco Island virtually every day during those trips. *Id.* ¶ 13. Indeed, the absence of alternative methods of transportation on the Island means that they could not complete their daily responsibilities without using their respective vehicles. *Id.* ¶ 14. In the two years since the City began operating the three stationary ALPRs, each Plaintiff has driven across the Island's three bridges on hundreds of occasions—meaning that they have already been photographed hundreds of times. The City likely will have thousands of photographs of each Plaintiff with precise time-and-location data if it is allowed to retain

ALPR records for three years. Such photographs are in addition to the many occasions they likely have been photographed by the City's mobile ALPR. *Id.* ¶¶ 40-41.

The City is rapidly accumulating a large database that provides a detailed picture of Plaintiffs' movements. Based on the frequency and times of day of Plaintiffs' bridge crossings, the City can easily compile a comprehensive profile of their day-to-day lives. For example, the City can determine at all times whether the Plaintiffs are on or off the Island—24 hours per day, 365 days per year. *Id.* ¶ 42-43. Yet the City has no plans to expunge any of that data regarding innocent and lawful conduct in the foreseeable future. *Id.* ¶ 44.

## **ARGUMENT**

### I. PLAINTIFFS HAVE STATED A CLAIM FOR VIOLATION OF THEIR RIGHTS UNDER THE FOURTH AMENDMENT

The Fourth Amendment to the Constitution protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." The "basic purpose" of the Fourth Amendment "is to safeguard the privacy and security of individuals against arbitrary invasions by governmental officials." *Camara v. Municipal Court of City and County of San Francisco*, 387 U.S. 523, 528 (1967).

The government engages in a "search" subject to Fourth Amendment controls whenever it intrudes upon something an individual seeks to preserve as private, so long as society is prepared to recognize the privacy interest as reasonable. *Kyllo v. United States*, 533 U.S. 27, 33 (2001). Warrantless searches are presumptively unreasonable.

*United States v. Karo*, 468 U.S. 705, 714-15 (1984). Because the City has neither sought nor obtained warrants for its surveillance of Plaintiffs, its conduct violates the Fourth Amendment if this Court determines that capture and retention of ALPR records constitutes a "search."

The Supreme Court held in *Carpenter* that "individuals have a reasonable expectation of privacy in the whole of their physical movements," and thus the government engages in a Fourth Amendment "search" when it uses electronic means to gather that information. 138 S. Ct. at 2217. The Complaint alleges that the City's aggregation of data derived from the hundreds of surveillance photographs taken of each Plaintiff permits it to track the whole of Plaintiffs' physical movements. Accordingly, the Complaint adequately alleges a Fourth Amendment violation.

### A. *Carpenter* Is Indistinguishable; It Focuses on Whether Government Is Gathering Data on the Whole of an Individual's Physical Movements, Not on the Means Used to Gather Data

The City seeks to distinguish *Carpenter* by noting that it involved cell-site records, not use of ALPRs. Def. Mot. 11-12. But Defendants' focus on the means by which the government gathers its data misses the mark; *Carpenter* focused instead on defining the contours of individuals' Fourth Amendment privacy rights. *Carpenter* noted that "[a] majority of this Court has already recognized that individuals have a reasonable expectation of privacy in the whole of their physical movements." 138 S. Ct. 2217 (citing *United States v. Jones*, 565 U.S. 400, 430 (2012) (Alito, J., concurring in judgment); *id.* at 415 (Sotomayor, J., concurring)). While Justices Alito's and Sotomayor's concurrences

in *Jones* were directed toward GPS devices, *Carpenter* extended their reasoning to cell-site records. The Court expressed concern over the emergence of a wide variety of "remarkably easy, cheap, and efficient" tracking technologies, *id.* at 2019, and did not suggest that tracking cell-site records raised greater constitutional concerns than alternative tracking methods. To the contrary, it reaffirmed that Fourth Amendment analysis "must take account of more sophisticated systems that are already in use or in development." *Id.* at 2018 (quoting *Kyllo*, 533 U.S. at 36).

*Carpenter* thus did not create a specific rule against government access to cell-site records without a warrant. Rather, it held that law-enforcement personnel violated Carpenter's Fourth Amendment rights because the cell-site records it obtained "provide[d] an intimate window into a person's life, revealing not only his particular movements, but through them his 'familial, political, professional, religious, and sexual associations.'" *Ibid*. (quoting *Jones*, 565 U.S. at 415 (Sotomayor, J., concurring)).

Plaintiffs have stated a claim upon which relief can be granted by alleging that the City's long-term aggregation of ALPR data violates their privacy in their physical movements. They have included many factual allegations in support of that claim, including: (1) the City operates at least three stationary ALPRs and one mobile ALPR, strategically located to ensure 100% coverage of Island vehicular traffic; (2) the ALPRs capture *millions* of images annually; (3) the City has been photographing and recording each Plaintiff's precise location multiple times every day, beginning in April 2021; (4) the City will retain that information in easily retrievable form for at least three years

from the date of recording;  (5) the City shares that information with other law enforcement agencies; (6) refraining from driving on the City's streets is not an option for Plaintiffs; daily travel in their cars/trucks is the only means by which Plaintiffs can commute to their places of employment and complete the other activities essential to their day-to-day existence; and (7) because of the nature of Plaintiffs' travels, the City can glean detailed information about where and when Plaintiffs work, whether they are on or off the Island at any given moment, and with whom they associate. Complaint ¶¶ 17, 22, 26, 33, 36, 37, 39, 40, 41, 42, 43, 59, 60, 61, 68.

*Carpenter* makes clear that determining whether any particular government surveillance program constitutes a Fourth Amendment "search" requires a fact-intensive examination of the extent to which the program gathers information about an individual's life. 138 S. Ct. at 2217-19. Post-*Carpenter* decisions from the lower courts agree. *Leaders of a Beautiful Struggle v. Baltimore Police Dep't*, 2 F.4th 330, 333 (4th Cir. 2021) (*en banc*); *Commonwealth v. McCarthy*, 484 Mass. 493, 494 (2020); *People v. Tafoya*, 494 P.2d 613 618 (Colo. 2021) ("The existence of a legitimate expectation of privacy must be determined after examining all the facts and circumstances in a particular case."). Whether, as alleged in the Amended Complaint, the City's surveillance program provides police officials with data sufficient to discern Plaintiffs' historical movements is a fact-specific issue not appropriately decided in connection with a motion to dismiss.

At the pleadings stage, a court accepts "the allegations of the complaint as true and construe[s] them in the light most favorable to the plaintiffs." *Ray v. Spirit Airlines*,

836 F.3d 340, 1347 (11th Cir. 2016). To survive a Rule 12(b)(6) motion to dismiss, a complaint need only "plead 'enough facts to state a claim that is plausible on its face.'" *Id.* at 1247-48 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plaintiffs' detailed factual allegations easily meet that unexacting plausibility standard.[1]

The facts underlying the Fourth Amendment claim in *Carpenter*—police sought a suspect's cell-site records for a *seven-day* period—differ from those at issue here. But many of those differences suggest that it is the City that intrudes more severely on privacy rights. Plaintiffs have been the targets of daily surveillance for a far longer period—it began in April 2021, and the City will retain all their ALPR data for at least three years. The *Carpenter* cell-site records provided more frequent location information on any single day than do the City's ALPR data, but the latter's location information is far more accurate. The *Carpenter* cell-site records could provide only an approximation of the target's location, by placing the target within a "wedge-shaped sector ranging from one-eighth to four square miles." *Carpenter*, 138 S. Ct. at 2218. In contrast, the City's ALPR information discloses Plaintiffs' *precise* locations several times per day—not a mere approximation. Complaint ¶¶ 18, 65. Most importantly, *Carpenter* involved a

---

[1] The City notes that a state trial court dismissed a lawsuit raising similar constitutional claims against the City of Coral Gables, Florida. Def. Mot. at 11 (citing *Mas Canosa v. City of Coral Gables*, No. 2018-033927-CA-01 (11th Cir. Ct. in and for Miami-Dade County, Fla., Oct. 4, 2021), *aff'd*, No. 3D21-1983 (Fla. 3d DCA, Apr. 26, 2023)). But that case was dismissed at summary judgment; the trial court had earlier *denied* a motion to dismiss for failure to state a claim. Nor does the appeals court's summary affirmance of the trial court provide support for the City's motion. The trial court granted summary judgment on several alternative grounds, including a finding that the plaintiff lacked standing. Because the appeals court did not state any rationale for affirmance, it could well have been based on the no-standing finding. A finding that the *Coral Gables* plaintiff lacked standing would be irrelevant to the issue here: whether a complaint filed by different plaintiffs states a claim on which relief can be granted.

targeted investigation of a single suspected criminal and sought records from Sprint covering only seven days. *Id.* at 2217 n.3. The City's surveillance program is vastly larger in scope and duration and entails long-term maintenance of personal information regarding *every resident* of Marco Island, including law-abiding citizens like Plaintiffs.[2]

The City seeks to distinguish *Carpenter* by asserting that the cell-site records "catalogued the defendant's movements in both public and private spaces," while the City tracks Plaintiffs' movements only in public spaces. Def. Mot. at 11. That argument misconstrues the facts in *Carpenter*. The cell-site information in *Carpenter* could not track the defendant's movements within private spaces, nor could it even determine the private space in which the defendant was located. All police could determine was that the defendant was located somewhere within an area no larger than several square miles. The City can pinpoint Plaintiffs' movements *just as accurately*. If, for example, an ALPR shows that Plaintiff Shannon Schemel has driven her car onto Marco Island and has not been photographed driving off the Island, then the City knows with 100% confidence that she is somewhere within the several square miles comprising Marco Island.

The Massachusetts Supreme Judicial Court made that precise point with respect to ALPRs that Massachusetts placed on two bridges—the only points of entry for those

---

[2] Moreover, the cell-site records at issue in *Carpenter* implicated the "third-party doctrine," under which the government is generally held *not* to have engaged in a search if it obtains information about the subject of its investigation from a third party. *See United States v. Miller*, 425 U.S. 435 (1976). Police obtained the cell-site records from Carpenter's cell-service provider, not from Carpenter himself. Unlike law-enforcement officials in *Carpenter*, the City cannot rely on the third-party doctrine here because they are obtaining their ALPR data as a result of their own direct surveillance of Plaintiffs.

seeking to enter Cape Cod by car. The court held that the photographs that Massachusetts took of all cars entering and exiting Cape Cod did not constitute a Fourth Amendment search, but only because Cape Cod is sufficiently large that the Commonwealth could not be deemed to know a driver's location simply because it knew that the driver was somewhere on Cape Cod. *Commonwealth v. McCarthy*, 484 Mass. 493 (2020). But the court made clear that it would have reached the opposite conclusion if strategic placement of ALPRs had permitted police to determine, for an extended period of time, that the drivers were located within a small area. *Id.* at 506-09.

### B. Plaintiffs Do Not Surrender All Fourth Amendment Privacy Rights When They Travel on Public Roads

In seeking dismissal of the Fourth Amendment claim, the City's principal argument is that "no objectively reasonable expectation of privacy exists in ALPR data captured solely in plain sight of the public on public roadways." Def. Mot. 5. But the only case it cites for that proposition, *United States v. Knotts*, 460 U.S. 276 (1983), is a 40-year-old Supreme Court decision that, as *Carpenter* explained, has little relevance to cases involving modern electronic monitoring devices that did not exist in the 1980s.[3]

*Knotts* involved the government's use of a "beeper" to aid in tracking a single vehicle through traffic. The beeper (which police tricked Knotts into placing in the vehicle) augmented their visual surveillance of the vehicle to Knotts's secret drug

---

[3] The City also cites several cases in support of its strawman argument that "Plaintiffs do not have a reasonable expectation of privacy in their license plate number." *Id.* at 5-7. Plaintiffs have never asserted an expectation of privacy in their license plate numbers.

laboratory. The Court held that the beeper-assisted surveillance did not constitute a Fourth Amendment "search" because the vehicle's route had been "voluntarily conveyed to anyone who wanted to look" at the public roads—and thus Knotts could not assert a privacy interest in the information obtained. 460 U.S. at 281.

*Carpenter* distinguished *Knotts* based on the "rudimentary" tracking at issue in the earlier case, as well as "the 'limited use which the government made of the signals from this particular beeper' during a discrete 'automotive journey.'" 138 S. Ct. at 2215 (quoting *Knotts*, 460 U.S. at 284). The Court concluded that "different [Fourth Amendment] principles" should apply to "the more sophisticated surveillance" developed in ensuing decades. *Ibid.* It noted that in *Jones* (decided three decades after *Knotts*), a majority of the justices had concluded that longer-term monitoring of criminal suspects' movements using modern surveillance techniques impinges on reasonable expectations of privacy—"regardless whether those movements were disclosed to the public at large." *Ibid.* (quoting *Jones*, 565 U.S. at 430 (opinion of Alito, J.); *id.* at 415 (opinion of Sotomayor, J.)).

*Carpenter* concluded that using cell-site records to track the defendant's movements constituted a Fourth Amendment "search," even though the movements occurred in public view, because similar comprehensive tracking by individual police officers watching public roads is not possible. 138 U.S. at 2217. The Court explained:

> Prior to the digital age, law enforcement might have pursued a suspect for a brief stretch, but doing so "for any extended period of time was difficult and costly and therefore rarely undertaken." ... For that reason, "society's

12

> expectation has been that law enforcement agents and others would not—and indeed, in the main, simply could not—secretly monitor and catalogue every single movement of an individual's car for a very long period."

*Ibid*. (quoting *Jones*, 565 U.S. at 429, 430 (Alito, J., concurring in judgment)).

Many recent lower-court decisions have applied *Carpenter* to conclude that longer-term electronic government surveillance constitutes a Fourth Amendment "search" even when the surveillance occurs in areas readily accessible to the public. The Fourth Circuit held in *Leaders of a Beautiful Struggle* that Baltimore's surveillance program, under which it retained for 45 days photographs taken by planes that flew over the city for 40 hours each week, likely violated the Fourth Amendment privacy rights of Baltimore residents. It issued a preliminary injunction against the program. 2 F.4th at 340-42 (holding that because Baltimore's surveillance program "opens 'an intimate window' into a person's associations and activities, it violates the reasonable expectation of privacy individuals have in the whole of their movements.") The court said that "people understand" they might be followed by a police officer "for a time" while outside; but that Baltimore's program, although limited to recording movement on city streets, "is not 'short-term' and transcends mere augmentation of ordinary police capabilities." *Id.* at 345.

Similarly, the Colorado Supreme Court held that police violated a homeowner's Fourth Amendment privacy rights by secretly placing a pole camera across the street from his house without a warrant and using it to film activity outside the house for three months—including activity behind the homeowner's six-foot fence that could not be

observed at street level but that was readily observable from neighboring properties. *Tafoya*, 494 P.3d at 623. The court rejected prosecutors' argument that the property's exposure to public view eliminated the homeowner's privacy rights, explaining:

> Public exposure of an area may diminish one's reasonable expectation of privacy, but "[a] person does not surrender all Fourth Amendment protection by venturing into the public sphere. To the contrary, what [one] seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected."

*Ibid.* (quoting *Carpenter*, 138 S. Ct. at 2217).

As the Court noted (Order at 9), a single fixed-location camera on a public road does not normally raise Fourth Amendment issues. *See Carpenter*, 138 S. Ct. at 2220 ("We do not ... call into question conventional surveillance techniques and tools, such as security cameras."). But where, as here, an amalgam of ALPRs records and preserves three years of location information and permits the government to pinpoint individuals' movements, the government interferes with reasonable expectations of privacy.

### C. Fourth Amendment Decisions Cited by the City Do Not Support Its Position

The City contends that "there is an overwhelming amount of court decisions upholding the use of ALPR systems—like the one at issue in this case—against constitutional challenge." Def. Mot. 7 n.5.[4] That contention is incorrect; the City has

---

[4] In defense of its decision to retain ALPR data for three years, the City repeatedly asserts that it is required by state law to do so. That assertion is incorrect. Guidelines issued by Florida's Criminal and Juvenile Justice Information System Council state that ALPR data may not be retained for more than three years, but they do not specify a minimum retention period. Complaint ¶¶ 45-48. Moreover, the State insists that the Guidelines are mere recommendations that could not bind the City.

cited *no* federal appellate decisions that so hold, and there are none.

Moreover, Defendants have inaccurately described a number of the decisions they cite. For example, they assert that *United States v. Yang*, 958 F.3d 851 (9th Cir. 2020), "affirm[ed] denial of a motion to suppress because the use of an ALPR database was not a Fourth Amendment search as it did not reveal 'the whole of [the defendant's] physical movements.'" Def. Mot. at 7 n.5. That case description is misleading in multiple respects. First, the quoted passage appears in an opinion concurring in the judgment, not the appeals court's decision. *See id.* at 863 (Bea, J., concurring in judgment). Second, the court never reached the merits of the defendant's claim that police violated his Fourth Amendment rights when they consulted a *private* ALPR database to seek location information for an SUV owned by a car-rental company. It ruled instead that the defendant lacked standing to object to the data search because he had no right to possess the SUV—he failed to return the vehicle when his lease expired, and the rental car company thereafter had sought to disable the vehicle remotely. *Id.* at 858-62. Third, Judge Bea's concurring opinion strongly supports Plaintiffs' position. He noted that the ALPR records consulted by police contained only one sighting of the SUV—and concluded that obtaining that single data point did not constitute a Fourth Amendment search because it "exposed nothing else about his 'particular movements' whatsoever." *Id.* at 863 (Bea, J., concurring in judgment). But he warned that a larger-scale ALPR program *would* create serious privacy concerns:

15

> ALPRs can effortlessly, and automatically, create voluminous databases of vehicle location information. If enough data is collected and aggregated, this could have the ability to identify quickly and easily the precise whereabouts and lifestyle habits of those whose vehicle information is recorded. ALPRs also collect information without individualized suspicion, and records can be maintained for years.

*Ibid*.

Similarly misleading is the City's citation to *United States v. Rubin*, 556 F. Supp. 3d 1123 (N.D.Cal. 2021).[5] The City asserts that the district court held that accessing an ALPR database is "not a Fourth Amendment search." Def. Mot. 10. The decision was, in fact, far more limited. The unidentified suspect in an armed robbery was observed leaving the scene of the robbery in a motor vehicle. Police entered the vehicle's license plate number into an ALPR system, which determined that the vehicle belonged to defendant Rubin and also provided location information for the vehicle on a handful of occasions. The district court held that the "limited information" about the suspect derived from accessing the ALPR database was not a Fourth Amendment "search," explaining that the database "did not provide significant information of value" and that "the information was not remotely comparable to the 'detailed, encyclopedic' information at issue in *Carpenter*. ... Unlike the cell-site location records there, the data here provided no more information than what could have been obtained through police surveillance." 556 F. Supp. 3d at 1130 & n.3 (quoting *Carpenter*, 138 S. Ct. at 2216). The information at issue in *Rubin* is also "not remotely comparable" to Marco Island's

---

[5] The City states inaccurately that the decision was issued by the Northern District of Florida.

ALPR system, which records information about each of the Plaintiffs (and every other resident of the City) hundreds of times per year.[6]

## II. PLAINTIFFS HAVE STATED A CLAIM FOR VIOLATION OF THEIR RIGHTS TO PRIVACY GUARANTEED BY THE FLORIDA CONSTITUTION

Article I, section 23 of the Florida Constitution, entitled "Right to Privacy," states that "[e]very natural person has the right to be let alone and free from governmental intrusion into the person's private life except as otherwise provided herein." The Florida Supreme Court has explained that the right to privacy protected by Article I, section 23 is "no less fundamental" than other rights protected by the Florida Constitution, *Weaver v. Myers*, 229 So. 3d 1118, 1130 (Fla. 2017), and is "broader, more fundamental, and more highly guarded than any federal counterpart." *Id.* at 1125. The Complaint's factual allegations explain how the City's ALPR surveillance system interferes with Plaintiffs' "right to be let alone and free from governmental intrusion" into their private lives.

The City argues that Article I, section 23, "in the context of an alleged search or seizure, is coterminous with the interpretation and application of the Fourth Amendment." Def. Mot. 15. That argument is inconsistent with the Florida Supreme Court's repeated admonition that the protection provided to privacy rights by Article I,

---

[6] Article I, section 12 of the Florida Constitution explicitly provides that its privacy protections "shall be construed in conformity" with the Fourth Amendment. Plaintiffs' section 12 claim (Count II) adequately states a claim for relief for the same reasons that Plaintiffs have adequately stated a claim under the Fourth Amendment. Finally, there is no merit to the City's argument (at 4 n.4) that Count I fails to state a Fourth Amendment claim because it fails to cite a statute granting a private right of action for asserting constitutional claims. No statutory authority is necessary for citizens to seek *injunctive relief* against constitutional violations. *Davis v. Passman*, 442 U.S. 228, 242 (1979). Moreover, even if the Complaint had also sought *monetary relief* for the constitutional violations, Defendants themselves identify a statute (42 U.S. § 1983) that authorizes such relief.

section 23, is *broader* than that afforded by the Fourth Amendment. *State v. Geiss*, 70 So. 3d 642 (Fla. 5th DCA 2011), on which Defendants rely for their "coterminous" argument, held merely that the "probable cause" sufficient under the Fourth Amendment to justify a warrant (authorizing the drawing of blood from a DUI suspect) also sufficed under Article I, section 23. *Id.* at 646. *Geiss* does not hold that the definition of a government "search" is no broader under Article I, section 23 than under the Fourth Amendment. Any such holding would undermine "a principal aim" of Article I, section 23: "to afford individuals some protection against the increasing collection, retention, and use of information relating to all facets of an individual's life," *Rasmussen v. S. Fla. Blood Service, Inc.*, 500 So. 2d 533, 536 (1987), and to "ensure[ ] that individuals are able to determine for themselves when, how, and to what extent information about them is communicated to others." *Shaktman v. State*, 553 So. 2d 148, 150 (Fla. 1989).

Florida courts considering claims under Article I, section 23 carefully consider the facts of each case to determine whether a constitutional violation has occurred. *See, e.g., City of North Miami v. Kurtz*, 653 So. 2d 1025, 1028 (Fla. 1995) ("[d]etermining whether an individual has a legitimate expectation of privacy in any given case must be made by considering all the circumstances"). Such fact-intensive analyses are not appropriately conducted at the pleadings stage, where Plaintiffs' well-pleaded factual allegations must be accepted as true.

The City also cites *State v. Tamulonis*, 39 So.3d 524, 528 (Fla. 2d DCA 2010), in support of its "coterminous" argument. Def. Mot. 15. In fact, *Tamulonis* strongly

supports Plaintiffs' position. While investigating an individual suspected of obtaining controlled substances by fraud, a detective obtained the suspect's prescription records from several pharmacies. It was undisputed that the detective's actions did not implicate the Fourth Amendment; the Supreme Court has held that under the "third-party doctrine," the Fourth Amendment does not recognize an individual's right to privacy in records concerning his or her activities maintained by pharmacies or other third parties. *See, e.g., Miller*, 425 U.S. at 443. *Tamulonis* nonetheless held that the Florida Constitution grants an individual "a privacy interest in his or her prescription records," noting that "the right to privacy under article I, section 23 of the Florida Constitution is broader in scope than that of the United States Constitution." 39 So.3d at 527-28.[7]

When the government intrudes on an individual's "legitimate expectation of privacy" (as broadly construed by Article I, section 23), Florida courts then examine "whether a compelling interest exists to justify that intrusion and, if so, whether the least intrusive means is being used to accomplish that goal." *Kurtz*, 653 So.2d at 1028. The City has made no serious effort to meet that burden. It argues that its decision to maintain ALPR records for three years "is compliant with Florida law," Def. Mot. 16-17, a reference to a non-binding state guidance document stating that ALPR records may be maintained for *no more* than three years. The City fails to explain why a three-

---

[7] The court ultimately denied the criminal defendant's motion to suppress evidence that police obtained from the pharmacies, but only after determining that: (1) Florida had a "compelling interest in regulating controlled substances"; and (2) the state statute authorizing police to obtain the pharmacy records was "narrowly tailored" to serve that compelling interest. *Id.* at 528.

19

year retention schedule satisfies a *compelling* interest; a non-binding guidance *permitting* the City to keep ALPR records for up to three years does not *require* it to do so.

## CONCLUSION

The Court should deny the motion to dismiss the Amended Complaint.

Dated: May 8, 2023　　　　　　　　　Respectfully submitted,

NEW CIVIL LIBERTIES ALLIANCE
1225 19th Street NW, Suite 450
Washington, DC 20036
202-869-5210

By: /s/ Richard A. Samp
Richard A. Samp, Virginia Bar No. 33856
rich.samp@ncla.legal
Sheng Li, Md. Bar No. 1508180001
sheng.li@ncla.legal

Counsel for Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served by electronic filing on May 8, 2023, on all counsel of record on the Service List.

/s/ Richard A. Samp

**Service List:**　　Ann R. Flanigan, aflanigan@wsh-law.com
Blayne J. Yudis, byudis@wsh-law.com
Weiss Serota Helfman Cole & Bierman, P.L.
200 East Broward Blvd., Suite 1900
Fort Lauderdale, FL 33301